**VICTOR et al. v. PORTER, Price Administrator.**

No. 308.

United States Emergency Court of Appeals.
Heard at New York June 10, 1946.

Decided Oct. 16, 1946.

Writ of Certiorari Denied Jan. 6, 1947.

See 67 S.Ct. 491.

Henry N. Rapaport, of New York City (Rapaport Brothers, of New York City, on the brief), for complainants.

Harry H. Schneider, Chief, Court Review Rent Branch, of Washington, D. C. (Richard H. Field, Gen. Counsel, of Washington, D. C., Jacob D. Hyman, Associate Gen. Counsel, of Buffalo, N. Y., and Eli A. Glasser, Atty., of Washington, D. C., on the brief), for respondent.

Before MARIS, Chief Judge, and MAGRUDER and LINDLEY, Judges.

MARIS, Chief Judge.

The Rent Regulation for Housing in the New York City Defense-Rental Area[1] establishes March 1, 1943, as the maximum rent date for housing accommodations rented on that date. For housing accommodations changed on or after November 1, 1943 so as to result in an increase in the number of dwelling units in such housing accommodations Section 4(e) (2) of the regulation established as the maximum rents the first rents charged after November 1, 1943. If the first rents are higher than the rents generally prevailing in the area for comparable housing accommodations on the maximum rent date Section 5(c) (1) of the regulation authorizes the Price Administrator on his own initiative or on application of the tenant to decrease the maximum rent otherwise allowable. In making the adjustment, however, Section 5 of the regulation places the administrator under the duty in cases involving construction to give "due consideration * * * to increased costs of construction, if any, since March 1, 1943."

The housing accommodations here involved fall within the purview of Section 4(e) (2) since they were changed after November 1, 1943, so as to result in an increase in the number of dwelling units and were first rented after that date. The complainants remodelled a five story structure located at 345 West 87th Street, New York City, from a private dwelling to an apartment house having ten rental dwelling units. The work was completed in the period from August through October 1944, and the apartments were first rented on November 1, 1944.

In their registration statements the complainants reported their first rents as their maximum rents. Thereafter the area rent director gave preliminary notice of his intention to reduce the "first rents" and by his orders dated March 24, 1945, the rents of the ten apartments were substantially reduced. The complainants' protest, as amended, was denied by the Administrator on January 29, 1946. The complainants then filed the present complaint in which they allege that the regulation is invalid; that they were denied procedural due process and that the reduction orders are not sustained by the evidence.

The complainants attack the regulation on the ground that Section 5, which provides for allowances for increased costs of construction, limits the allowances to such increases as took place after the maximum rent date for the area, March 1, 1943. They also attack the formula used by the Administrator to implement the regulation in this respect. We shall first consider the attack upon the regulation.

The complainants assert that in the New York City Defense-Rental Area practically no building took place after 1941 and they argue that to limit the allowance provided by Section 5 of the regulation to such building cost increases only as took place after March 1, 1943, is unlawful when applied to that defense-rental area since it does not effectuate the purpose of Congress as expressed in Section 2(b) of the Emergency Price Control Act.[2] They assert that the Congressional purpose, as thus expressed,

---

[1] 8 F.R. 13914.

[2] "So far as practicable, in establishing any maximum rent for any defense-area housing accommodations, the Administrator shall ascertain and give due consideration to the rents prevailing for such accommodations, or comparable accommodations, on or about April 1, 1941 (or if, prior or subsequent to April 1, 1941, defense activities shall have resulted or threatened to result in increases in rents for housing accommodations in

was to encourage the creation of additional housing units and new housing construction.

■ We find the premise of this argument, namely, that in enacting Section 2(b) of the Emergency Price Control Act Congress had for its purpose the encouragement of the construction of new housing, to be without basis. It is well to remember that in early 1942 when Congress enacted the Emergency Price Control Act its primary intent was to utilize all the national resources towards the successful prosecution of the war in which the nation was then engaged. It was not until a later period that the possibility arose of encouraging the general building of housing accommodations without interfering with the war effort. Many of the arguments advanced by the complainants as to the acute housing shortage presently existing and the lack of encouragement to builders to engage in new construction are arguments which might well be advanced to Congress but which do not help us in deciding the issue whether the Administrator has in the regulation under attack acted contrary to the purposes of the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 901 et seq.

The primary mandate given to the Administrator by Section 2(b) of the act was to keep rents down to a fair level so as to prevent inflation. We think the statutory direction to take increased costs into account in fixing the general level of rents was not for the purpose of encouraging new construction but rather in order to make certain that maximum rents would be generally fair and equitable. The most that can be said is that Congress directed the Administrator to give this factor weight in fixing maximum rents even though to a certain extent it might prove to be inflationary. The allowance was thus not intended as a departure from the freeze date method of

rent control but merely a modification designed to keep freeze date rents generally fair and equitable.

The complainants urge that by Amendment 21 to the regulation [3] issued and effective November 23, 1945, the Administrator made a public admission that the use of the freeze date from which to calculate allocable increases in costs of construction was improper and that the proper date was 1939. It must be remembered that at the time the amendment was issued conditions had wholly changed from those existing when Section 5 of the regulation was first promulgated. Hostilities had ceased. The ban on non-priority building had been lifted. In the light of those circumstances and pursuant to Section 1(a) of the act, which gives as one of its purposes "to assist in securing adequate production of commodities and facilities" the Administrator as an incentive for the building of housing accommodations gave the additional allowance provided by the amendment. Such allowance was consequently limited to those cases in which construction work was begun on or after November 23, 1945, a differentiation which the Administrator was authorized to make by Section 2(c) of the act.

■ We conclude that Section 5 of the regulation is not invalid upon the grounds asserted by the complainants. We accordingly pass to the consideration of the complainants' attack upon the formula employed by the Administrator to compute the allowance for increased costs of construction made to the landlords under the regulation.

Counsel for the Administrator in his brief describes the formula as follows:

"(1) determine the percentage increase in general construction costs in the Area during the period from the maximum rent date to the date of completion of the work in the particular case; (2) use this percentage to

---

such area inconsistent with the purposes of this Act, then on or about a date (not earlier than April 1, 1940), which in the judgment of the Administrator, does not reflect such increases), and he shall make adjustments for such relevant factors as he may determine and deem to be of general applicability in respect of such accommodations, including increases or decreases in property taxes and other costs within such defense-rental area." 50 U.S.C.A.Appendix, § 902(b).

[3] "In cases involving construction, appropriate allowance shall be made for general increases in costs of construction in the defense-rental area since 1939." (10 F.R. 14399.)

772

arrive at the portion of the total dollar expenditures occasioned by the rise in general construction costs; (3) allocate this dollar amount to each unit; (4) return this dollar amount to the landlord by spreading it over the estimated probable life of the improvement as a whole."

■ The complainants attack this formula upon two grounds. The first is that the period for computing increased construction costs should begin much earlier than the maximum rent date. This is the same point raised in the attack on the regulation which we have already discussed and determined to be without merit. It, therefore, requires no further discussion here. The second ground of attack upon the formula is that it does not provide for interest upon that portion of the allowance the recoupment of which by the landlord is to be deferred over the period of the useful life of the improvement.

■■ The complainants argue for their right to an allowance for interest by analogy to the interest allowance made in eminent domain cases. The principles of the law of eminent domain are not applicable, however. We have held that the Emergency Price Control Act does not require the fixing of maximum rents at a level which will assure to landlords a fixed or definite rate of return upon their investment but only on a level which will be generally fair and equitable to the rental housing industry as a whole. 315 West 97th Street Realty Co., Inc., et al. v. Bowles, Em.App.1946, 156 F.2d 982.

The complainants are no more entitled under the act to a fixed or definite rate of interest upon that portion of their investment which represents increased construction costs than they are upon the remainder of their investment in the housing accommodations here involved. They are of course entitled to the application to the facts of their case of a formula which is generally fair and equitable to the industry as a whole. We think that a formula which provides for the recoupment by landlords of the whole of their increased construction costs over the period of the useful life of the improvement cannot be held to be unfair or inequitable. Accordingly the complain-

ants' contention that the Administrator's formula was arbitrary and not in conformity with the act cannot be sustained.

■ The complainants assert that they did not receive a fair hearing because the area rent director did not inform them as to the pertinent data concerning the housing units upon which he relied as comparable in making his reduction orders and that they were thereby deprived of due process of law. We think that the record sustains the complainants' contention that they did not receive a fair hearing in the proceedings before the area rent director. Compare Interstate Commerce Commission v. Louisville & N. R. Co., 1913, 227 U.S. 88, 33 S.Ct. 185, 57 L.Ed. 431. It does not necessarily follow, however, that the complainants have been deprived of due process of law. As we recently had occasion to point out in Direct Realty Co. v. Porter, Em.App.1946, 157 F.2d 434, while procedural due process definitely requires that a hearing be accorded at some stage of an administrative proceeding it does not require that the hearing take place at the initial stage. See Opp Cotton Mills v. Administrator, 1941, 312 U.S. 126, 152, 153, 657, 61 S.Ct. 524, 85 L.Ed. 624. Accordingly if the complainants in the ensuing protest proceeding were apprized of the evidence upon which the Administrator relied and were then given a genuine hearing de novo the demands of due process have been met.

The complainants' contention that the granting of a hearing de novo in the protest proceeding does not cure the failure of the area rent director to give a fair hearing is without merit. If, as here, upon the hearing de novo in the protest proceeding it appears that the area rent director's order was right the protestant has not been injured by the restraint imposed upon him by the area rent director against charging rents higher than those to which he is ultimately found to be entitled. If, on the other hand, the Administrator in the protest proceeding finds that the order of the area rent director was erroneous and increases the rent above that set by that order it is the Administrator's practice to make his order retroactive if he also finds that the outcome of the proceeding before the area rent

director was prejudicially affected by lack of procedural due process.[4] Accordingly under these circumstances also no ultimate prejudice to the protestant results from the area rent director's failure to accord him a fair hearing.

Turning then to the question whether in this case the Administrator accorded the complainants a genuine hearing de novo we note that in the protest proceedings the Administrator directed that there be made available to the complainants copies of an affidavit of the supervising examiner and of the inspector. Incorporated in the inspector's report was a detailed study of the comparable housing units relied upon by the Administrator. The complainants were given an opportunity to present such relevant evidence as they might desire and did in fact present rebuttal evidence. The complainants in the protest proceeding had access to the registration statements which set forth the March 1, 1943 rentals, equipment and services for the comparable units and the Rent Department charts and tables containing data upon which the Administrator relied as to the construction costs item.

The complainants urge that the hearing which they received upon the protest was not of the character to which they were entitled. They point to the fact that the Administrator fixed the rents in amounts identical to those fixed by the area rent director. They assert that this poses a problem, because the Administrator in fixing the rents had before him the complainants' costs of construction and purported to make an allowance for increased costs of construction whereas the area rent director did not have the construction figures before him and consequently could not have made the same allowance for increased costs of construction. They urge that this may only be explained upon the theory that the Administrator assumed that the area rent director had all the information which he had and that the Administrator went through the form of giving the complainants a new hearing but in fact merely approved what had been done at the area level. Conse-quently, they contend, they were deprived of a genuine hearing de novo and, therefore, of due process of law.

We think, however, that a much more likely explanation is that the Board of Review and the Administrator in the light of the evidence before them in the subsequent protest proceeding determined that the rentals fixed by the area rent director adequately reflected the proper allowance for increased construction costs. For it must be remembered that the determination of the rental of a specific housing accommodation upon the basis of the rents generally prevailing in the area for comparable housing accommodations on the maximum rent date does not involve an exact mathematical computation. On the contrary, since prevailing rents for comparable accommodations vary and since the comparable accommodations themselves are seldom identical in all respects such a determination calls for the exercise of judgment in the light of all the factors involved.

Accordingly it is entirely possible that the Board of Review and the Administrator while giving more weight to the factor of increased construction costs than did the area rent director may properly have given less weight to other factors entering into the determination of the rents in question and thus have arrived in the end at the same round figures as did the area rent director.

Upon the record in this case we cannot hold that the complainants were deprived of due process of law.

We have examined the evidence before the Administrator upon the protest proceeding and find it wholly adequate to sustain the Administrator's conclusion that the complainants' rents were higher than the rents generally prevailing in the area for comparable housing accommodations and to sustain his findings as to the amounts at which the complainants' rents should be fixed so as to bring them into line with the rents for the comparable housing accommodations.

The complainants assert that in computing the allowance for increased costs of

---

[4] In the matter of Kuskin & Rotberg, Inc., 3 Op. & Dec. (OPA) p. 3217; In the Matter of Sophie Tager, 4 Op. & Dec. (OPA) p. 3153.

construction the Administrator improperly applied his formula. They object to the period of ten years determined by him as the life span of the improvements and presented evidence purporting to support a finding of from five to seven years. There is, however, ample evidence to support the Administrator's finding and we may, therefore, not disturb it.

A judgment will be entered dismissing the complaint.