**FURY v. FLEMING, Temporary Controls Administrator.**

**No. 380.**

United States Emergency Court of Appeals.

Heard at New York City Jan. 14, 1947.

Decided April 2, 1947.

Garry J. Fury, of New York City, for complainant.

Harry H. Schneider, Asst. Gen. Counsel, of O.P.A., of Washington, D. C. (Carl A. Auerbach, Gen. Counsel, and Betty L. Brown, Atty., both of O.P.A., both of Washington, D. C., on the brief), for respondent.

Before MARIS, Chief Judge and MAGRUDER and McALLISTER, Judges.

McALLISTER, Judge.

This case, while it involves only an inconsiderable amount of money in the way of rental, is perhaps representative of many thousands of controversies between small landlords and their tenants, during the pendency of rent control, which are of vast importance to the parties concerned. Complainant has pursued all of his remedies aggressively, but unsuccessfully up to the present, from the time he received a notice of reduction of rent, first, before the Area Rent Director, then by protest proceedings before a Board of Review to which the case was referred, and finally by complaint against the order of the Administrator in the action before this court. The circumstances of the case and the importance of the applicable principles of law require rather extended treatment and consideration.

Complainant challenges an order entered by the Area Rent Director of the Bronx Office of the New York City Defense-Rental Area, reducing the maximum rent for an upstairs five-room apartment in a two-family dwelling from $55 to $48.50 per month. The rent was reduced on the ground that there had been a decrease in the services furnished by the landlord since the date on which the maximum rent was fixed.* The decrease in services, as recited in the order of the Area Rent Director, consisted of failure to furnish an adequate supply of hot water for the tenant, for which a reduction in rental of $2 a month was made; and it was further determined by the Director that the landlord had failed to decorate and paint the premises, according to his customary practice, for which a reduction in rental of $4.50 a month was made.

Complainant filed a protest to the order reducing the rent, which was referred to a Board of Review. The Board found that an adequate supply of hot water was "presently" being furnished to the tenant. It accordingly recommended a restoration of the decrease of $2 per month for this item. But the Board also found that the premises had not been decorated or painted in accordance with the customary practice of the landlord and, therefore, recommended a decrease in the original rentals in the

---

* Section 5(c) and 5(b) (2) of the New York City Rent Regulation for housing provides:

"Section 5. Adjustments and other determinations. In the circumstances enumerated in this section, the Administrator may issue an order changing the maximum rents otherwise allowable or the minimum services required. In those cases involving * * * an increase or decrease of services * * * the adjustment in the maximum rent shall be the amount the Administrator finds would have been on March 1, 1943, the difference in rental value of the housing accommodations by reason of such change: Provided, however, That no adjustment shall be ordered where it appears that the rent on the date determining the maximum rent was fixed in contemplation of and so as to reflect such a change.

"(c) Grounds for decrease of maximum rent. The Administrator at any time, on his own initiative or on application of the tenant, may order a decrease of the maximum rent otherwise allowable, only on the ground that:

"(3) Decrease in services, furniture, furnishings, or equipment.—There has been a decrease in the minimum services, furniture, furnishings or equipment required by section 3 since the date or order determining the maximum rent.

"Section 5(b) (2). Decreases after November 1, 1943.—Except as above provided, the landlord shall, until the accommodations become vacant, maintain the minimum services, furniture, furnishings, and equipment unless and until he has filed a petition to decrease services, furniture, furnishings, or equipment and an order permitting a decrease has been entered thereon; * * *"

amount of $4.50 per month, sustaining the Area Rent Director in this respect. The Administrator agreed with the findings and recommendations of the Board of Review and also was of the independent opinion that the protest should be denied as to the decorating item, but granted as to the furnishing of an adequate supply of hot water, with the result that the rent was reduced from $55 to $50.50 per month. No findings were made by the Board of Review on the question whether there had been at any time a reduction of services in furnishing adequate hot water, and the Administrator said nothing about this phase of the controversy in his opinion and final order.

Complainant contends that there was no finding or determination by the Board of Review or the Administrator that the landlord had ever failed to furnish an adequate supply of hot water, and that, therefore, the Administrator's order granting the landlord's protest, which restored the decrease in rental made by the Area Rent Director, should have applied retroactively as of the effective date of the Area Rent Director's order. Otherwise, complainant declares, he will suffer a reduction of rentals for this item extending over a considerable period —from the effective date of the Area Rent Director's order reducing the rental to the date of the Administrator's order granting the protest in this respect and restoring the rental.

In addition to the contention above mentioned, the more important part · of the landlord's complaint deals with the denial of his protest against the Area Rent Director's order reducing the rental on the ground that there was a decrease of services of decorating and painting the premises.

We shall proceed, then, to discuss the first ground of the complaint. With respect to the order of the Area Rent Director reducing rental for decrease of services arising out of the alleged failure to furnish an adequate supply of hot water, we are of the opinion that the order of the Administrator granting the landlord's protest with respect to this item should operate retroactively as of the effective date of the Area Rent Director's original order. The Board of Review found that there was a considerable conflict of evidence "as to whether there was, in fact, a decrease in the hot water supply." The Board stated:

"The subject apartment is located in a · two-family dwelling; the other unit is occupied by the landlord. The two units are supplied by the same hot-water tank. The record contains an affidavit by the tenant to the effect that hot water was supplied only two days a week, and a statement in the Rent Inspector's affidavit that at the time of his inspection he found the water to be slightly better than lukewarm. In rebuttal, protestant presented affidavits by Packey Fury, Anna Misenti, and Catherine Clemenza to the effect that they had occasion to use the hot water in the protestant's apartment several times a week and found it to be in plentiful supply. On the basis of all the evidence, we are of the opinion that protestant has established that there is presently being supplied an adequate supply of hot water."

From the foregoing, it is evident that the Board did not find that there had been a failure to furnish an adequate supply of hot water at any time. It limited its findings, on this aspect of the case, to the conclusion that at the time it rendered its opinion, an adequate supply of hot water was then being furnished. The Administrator, in his opinion disposing of the protest, declared that he was in substantial agreement with the reasons set forth for its recommendations by the Board of Review, and was also of the "independent opinion" that the protest should be granted in part and denied in part, as recommended by the Board.

However, Section 203(c) of the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A.Appendix, § 923(c), provides that upon request of a protestant, any protest shall, before denial in whole or in part, be considered by a Board of Review in accord with the regulations promulgated by the Administrator, and that:

"The Administrator shall cause to be presented to the board such evidence, including economic data, in the form of affidavits or otherwise, as he deems appropriate in support of the provision against which the protest is filed. The protestant shall be accorded an opportunity to present rebuttal

evidence in writing and oral argument before the board and the board shall make written recommendations to the Price Administrator. The protestant shall be informed of the recommendations of the board and, in the event that the Administrator rejects such recommendations in whole or in part, shall be informed of the reasons for such rejection."

Under the foregoing section of the statute, it seems obvious that where a protest is considered by a Board of Review and its recommendations are adopted by the Administrator, the recommendations so made are the reasons which the Administrator is required, by statute, to inform the protestant, why his protest is denied in whole or in part. Where the recommendations of the Board are rejected in whole or in part, the Administrator is also required by the statute to inform the protestant of his reasons for such rejection; and where the Administrator not only accepts the recommendations of the Board but also independently arrives at the same conclusion, he is bound to inform a protestant of his reasons, if they are other than those embraced in the Board's recommendations, for his decision.

In any case where the Administrator denies a protest in whole or in part, he is obliged to inform the protestant of the grounds upon which his decision is based. Section 203(a) of the Emergency Price Control Act of 1942, as amended.

█ In this case, the result of the Area Rent Director's order was to reduce the landlord's rentals from February 8, 1946, to September 26, 1946 (the date of the final order of the Administrator) because of a failure to furnish an adequate supply of hot water. Complainant protested this order. The Administrator found, on September 26, 1946, that an adequate supply of hot water was then "presently" being supplied. But there was no finding whatever as to whether there had been any prior failure of the landlord to furnish hot water. An order of the Administrator reducing rental because of a decrease in service furnished by a landlord, must be based upon findings that such a service was not furnished by the landlord. That, in general terms, is what is meant by the requirement of the statute that the Administrator must inform a protestant in such a case of his reasons for the denial of a protest. But here the protest was not denied as far as the hot water item was concerned. It was granted as of the date of the Administrator's order. True, it was based upon the finding that an adequate supply of hot water was "being presently furnished." But there was no finding that there had ever been any failure of the landlord in this respect. And to deny a protest on the ground of a decrease in services, there must be such a finding.

We come, then, to the question whether, in view of the foregoing circumstances, the order of the Administrator restoring the reduced rentals for the hot water item should be given effect retroactively as of the effective date of the Area Rent Director's order decreasing the maximum rental in the amount of this item.

█ It is the general rule that rent adjustments made by the Administrator have prospective operation only. Goodman, et al. v. Bowles, Em.App., 1943, 138 F.2d 917. But in cases where there are present such circumstances, as fraud, misrepresentation, mistake of law, or denial of procedural due process of law, which prejudicially affect the proceeding, adjustments by way of increases in rent are given retroactive effect. In re Kuskin and Rotberg, Inc., 1II Op. and Dec. OPA (Pike and Fischer) 3217.

Complainant insists that he was denied procedural due process of law with regard to the item of decrease of rentals for failure to furnish an adequate supply of hot water. In considering whether complainant's claim in this respect is valid, we are obliged to review briefly the circumstances surrounding the inception of the case. These proceedings were commenced by the Area Rent Director, apparently acting on his own initiative. On November 20, 1945, he sent a notice to the landlord stating that a preliminary investigation indicated that the maximum rent for the premises should be adjusted because of a decrease in services with respect to the failure to paint and decorate, and to furnish an adequate supply of hot water. The notice advised that the Rent Director proposed to reduce

the rent in a stated amount, and that if the landlord wished to file an answer to the proposed action, he should file not only his answer but also written evidence supporting it. Immediately upon receipt of the notice, the landlord replied in writing to the Area Rent Director, stating that he was thereby making answer; that the tenant who occupied the upstairs apartment in question, with his wife, was a monthly tenant, and that "from the very inception of his tenancy several years ago, it was agreed and understood that such tenant was to make all ordinary repairs and do all necessary painting and decorating of the apartment at his own cost and expense. This was particularly so, because it was partly for that reason that the rental was fixed at the especially low rate of $55 per month for a five-room apartment with garage." The affidavit then continued:

"2. It is absolutely untrue that such tenant is not receiving an adequate hot-water supply. If there be a lack of hot water, it can only be due to the careless habit of the tenant's wife of letting the hot water run wastefully and without being used. In this connection, it is to be observed that the premises, containing only two families, are equipped with an 80-gallon copper tank separately heated by a hot-water furnace which is continuously kept burning day and night throughout the year, and that the annual consumption of fuel for both the hot-water and heating furnaces is between 18 to 22 tons of coal. Such tank is also heated by heating furnace in winter.

"3. Such tenant has caused extensive damages to the said premises and particularly to the Landlord's apartment below on the first floor by the careless habit of the tenant's wife of letting the water run over the kitchen sink onto the floor, through the ceiling and into the Landlord's apartment, so much so as to have caused on more than one occasion considerable damage to the plaster and portions of it to fall, necessitating expensive repairs and repainting.

"4. Such tenant is using the premises occupied by him for commercial purposes and for the storage of merchandise for sale in violation of the law and contrary to the terms and obligations of his tenancy. Wherefore the proposed proceedings to reduce the rent should not be commenced."

In reply to plaintiff's answer, the Area Rent Director made an order reducing the rent for the apartment because of failure to paint and decorate and to furnish adequate hot water. The order recited that the Rent Director had determined upon the order, "after consideration of all of the evidence in this matter."

■■ There is no evidence in the record indicating any facts upon which the Rent Director based his order. As far as appears, the order was made, as counsel for complainant declare, on the bare oral and unsupported complaint of the tenant. We do not know what facts that complaint embraced. There is no evidence indicating the nature of the preliminary investigation made by the Area Rent Director, which he mentioned in his notice of proceedings to decrease the rent. Complainant's counsel emphatically state that no such investigation was ever made prior to the order. In any event, it is clear that complainant herein was not informed by the Area Rent Director as to the evidence or data upon which he relied in making the rent reduction orders. Where an Area Rent Director makes an order reducing rentals without informing a landlord as to the pertinent data on which he relies, the landlord cannot be said to have received a fair hearing in proceedings before the Director. If his claim were to be denied in this manner without further recourse by him in the way of review by the Administrator, such a landlord would be clearly denied procedural due process of law. Of course, if such a landlord, in the ensuing protest proceeding, were apprised of the evidence on which the Price Administrator relied in reducing his rent, and were then given a genuine hearing de novo, the demands of due process would be met. Victor v. Porter, Em.App., 1946, 157 F.2d 769, 772. But in this case, the Administrator never passed upon the question as to whether there had been failure to furnish hot water between the effective date of the Area Rent Director's order and the Administrator's final order, and thus left the reduction of rent for this item effective as for that entire period. In this,

complainant was denied due process of law as to his claim with respect to the reduction of rent for failure to furnish an adequate supply of hot water.

We have, finally, for determination, the question of the reduction in rental for the decrease in service of painting and decorating. While the order of the Area Rent Director with reference to this item was subject to the challenge that the landlord did not receive a fair hearing in proceedings before the director, nevertheless, in the ensuing protest proceedings, the landlord was informed of the evidence on which the Administrator relied in reducing the rental, and was actually given a genuine hearing de novo, thus satisfying the demands of due process. See Victor v. Porter, supra.

At the outset of our discussion of this aspect of the case, it should here be emphasized that the lease between the parties was only an oral lease for a tenancy from month to month. The decision of the Administrator reducing the rent because of decrease of service in painting and decorating the premises was based upon the theory that such services were actually provided by the landlord on the maximum rent date. This was evidenced, according to the Administrator, by the affidavit of the tenant that the apartment in question was completely painted and decorated and the floors were cleaned and shellacked in June 1939, and again in December 1941. There was thus established, the Administrator contends, by a prima facie presumption, a customary practice on the part of the landlord to paint the premises every two and a half years, and, accordingly, that was one of the services which was provided for the landlord on the maximum rent date. See the opinion of the Administrator in the Matter of Bainbridge Associates, Inc., III Op. and Dec. OPA (Pike and Fischer) 3119.

The first of the dates above mentioned, as the time when the premises were decorated, was before the tenant occupied the apartment; the second was after the tenant's occupancy of the premises for approximately two and a half years, but before the maximum rent date. It is unnecessary to pass upon the question whether the conduct of the landlord in this case, gave rise to a presumption of fact, or merely a reasonable inference that it was the customary practice to paint the premises every two and a half years. We shall, for the purpose of this case, treat such circumstances as giving rise to a presumption of fact.

While disclaiming that these circumstances gave rise to a presumption that there was, on the part of the landlord, a customary practice to paint and decorate the premises every two and a half years, plaintiff's principal contention, in this regard, is that the landlord and the tenant agreed at the inception of the lease that the tenant would do his own painting and decorating. When the landlord first received notice from the Area Rent Director that he proposed to reduce the rent because of the landlord's decrease of services and his failure to paint and decorate the entire premises, complainant immediately filed an answer and set forth that: "From the very inception of the tenancy several years ago, it was agreed and understood that such tenant was to make all ordinary repairs, and to do all necessary painting and decorating of his apartment at his own cost and expense. This was particularly true because it was partly for that reason that the rental was fixed at the especially low rate of $55 per month for a five-room apartment together with a garage." The Administrator in his answer to the complaint filed in this case, observes that this showing of the landlord constituted evidence on his behalf before the Rent Director. Subsequently, in the protest proceedings, complainant filed an affidavit to the same effect:

"The understanding from the outset was that the tenant was to do his own painting or make his own repairs in his own apartment. The rent he is paying is too low to warrant any painting. The rent is Fifty-five ($55) Dollars a month inclusive of the garage or $10 a room, deducting $5 for the garage. This is at least $2 less than the minimum charged for similar apartments in nearby homes, which average about $14 a room per month. I never raised the rent when I was able to do so because of the fact that it was understood that the tenant was to do his own painting and make all ordinary repairs.

"The tenant has never complained to me about any lack of hot water or painting or repairs during the six years he has been occupying the premises. It was only after he was notified to move out as an undesirable tenant because of damage he caused and his continuous use of the premises for business purposes that he began making complaints in accordance with his threat to make trouble if I tried to evict him. Proceedings to evict him have been begun and are still pending."

Although the Administrator incorporated into the record the affidavit of the tenant's wife, no denial has ever been made by the tenant or his wife, and no evidence has ever been introduced, to contradict complainant's evidence that there was an agreement between the parties at the inception of the lease that the tenant was to do all painting and decorating of his apartment at his own expense.

The Board of Review found that the "bare assertion" of the complainant that it was the understanding between the parties that the tenant was to do his own painting and decorating in his apartment at his expense, was inconclusive as against his actual practice, and cited as authority for its conclusions, two decisions by the Administrator: In re Matter of 535 Parkside Corp., III Op. and Dec. OPA (Pike and Fischer) 3065; and In the Matter of Sam Friedman, III Op. and Dec. OPA (Pike and Fischer) 3496.

To characterize as a "bare assertion" complainant's written answer to the Rent Director's notice, which the Administrator considered to be of the character of evidence, as well as complainant's sworn evidence by affidavit, seems unjustified, especially in view of the fact that it was in no wise denied or contradicted by any other pleadings, or statements, or evidence in the case.

With reference to the authorities cited by the Board, the Parkside case was one in which the landlord's claim that the tenant had waived its right to the customary service of decorating in consideration of a stated rental, was squarely denied by the sworn statement of the tenant; and the Friedman case disclosed that, although the landlord in an affidavit claimed that the tenant had been told in 1939, when the premises in that case had been rented, that he would have to pay an increased rental whenever the apartment was painted, nevertheless, the tenant denied such statement in its entirety.

We are referred to no authorities, nor are we aware that the argument is advanced on behalf of the Administrator that where the parties to a lease explicitly agree that a service is not to be furnished by a landlord, such agreement is to be set aside or disregarded by the Administrator in protest proceedings because he may find, from the conduct of the landlord, that it was his customary practice to furnish such a service. A presumption arising from the conduct of the landlord that it was his customary practice to furnish a certain service indicates that this is what the parties to a lease implicitly agree that the tenant shall receive. What the parties have agreed upon, as of the maximum rent date, is the controlling factor. In rent control, under the maximum rent date method, rentals are "rolled back and frozen as of an earlier date and at levels which landlords and tenants had worked out for themselves by free bargaining in a competitive market, prior to the time when defense activities had injected into the market an abnormal factor resulting, or threatening to result in rent increases inconsistent with the purposes of the Act." Chatlos v. Brown, Em.App. 1943, 136 F.2d 490, 493. The rental bargain, as of the maximum rent date, between the landlord and tenant, was frozen. The regulation leaves the parties in the situation in which it finds them—with the bargain they have made. Lakemore Co. v. Brown, Em.App., 1943, 137 F.2d 355. What services were included in the agreement between the landlord and the tenant in this case? A presumption of fact, based upon a consideration of the conduct of the parties, that it is understood that a tenant is to receive a certain service from the landlord disappears upon proof of the fact that the landlord and tenant explicitly agreed that the tenant was not to receive such a service. The evidence was not in dispute. Complainant's affidavit that it was the agree-

ment that the tenant should do his own decorating at his own expense was uncontradicted. The finding of the Board of Review and the Administrator's order denying complainant's protest based upon the findings that the tenant was entitled to have the premises painted and decorated, because of the presumption from the landlord's conduct that it was his customary practice to supply this service, was not supported by the evidence.

 This brings us to the question whether, with respect to the decorating item, complainant is entitled merely to prospective relief or whether, in setting aside the Administrator's order on this item, complainant should have retroactive relief from the date of the Area Rent Director's original order. While the requirements of due process were ultimately observed with regard to the painting and decorating item in that complainant received a fair hearing before the Administrator on this matter, nevertheless, he did not receive such fair hearing at the level of the Area Rent Director, for complainant was not informed of the evidence upon which the Director relied in making his order. Since we have held that the final order of the Administrator on this item was not supported by substantial evidence, the order of the Administrator should be set aside, the protest granted, and the order of the Area Rent Director, made without a fair hearing to complainant, should be set aside retroactively as of the effective date of such order.

It is unnecessary to discuss why the premises were painted by the landlord two and a half years after the tenant had first occupied them. At that time, however, there was no rent control law; the tenancy was merely from month to month, and could have been terminated at the end of such period by the landlord. He might have desired to have his own downstairs apartment redecorated and, at the same time, for the benefit of his property, also have included the upstairs under some arrangement. Whether these are likely or unlikely situations, they are not before us for determination. The only questions we are called upon to decide are whether the complainant was denied due process of law and a fair hearing with regard to whether he furnished an adequate supply of hot water, and whether the order of the Administrator on the matter of painting and decoration, was supported by the evidence. Our conclusions are that on the first item, there was failure of due process, and on the second, that the order was not supported by substantial evidence.

A judgment will, accordingly, be entered setting aside the Administrator's order denying the protest in part and granting it in part, and remanding the case to the Administrator for entry of an order granting complainant's protest and setting aside the order of the Area Rent Director retroactively as of the effective date of such order.