162 F.2d 206 (1947)
150 EAST 47TH STREET CORPORATION
v.
CREEDON.
No. 349.
United States Emergency Court of Appeals.
Heard March 7, 1947.
Decided June 12, 1947.
Before MARIS, Chief Judge, and MAGRUDER and McALLISTER, Judges.
Henry N. Rapaport, of New York City (Rapaport Brothers, of New York City, on the brief), for complainant.
William R. Ming, Jr., of Washington, D. C. (Carl A. Auerbach, Harry H. Schneider, Charles P. Liff, and Betty L. Brown, all of Washington, D. C., on the brief), for respondent.
Heard at New York City March 7, 1947.
MAGRUDER, Judge.
This is a complaint filed pursuant to § 204(e) (1) of the Emergency Price Control Act, as amended, 58 Stat. 639, 50 U.S.C.A. Appendix, § 924(e) (1), in which we are asked to enter judgment declaring invalid ab initio an order issued by the Rent Director of the New York City Defense-Rental Area on March 27, 1946, decreasing the maximum rent for apartment 3-C at 150 East 47th Street from $85 to $67.50 per month effective retroactively as of October 1, 1945, and directing all rent in excess of $67.50 per month collected since October 1, 1945, to be refunded to the tenant within thirty days.
In the latter part of 1944 complainant purchased two adjoining old-fashioned brownstone private dwellings located at 150 East 47th Street and proceeded to convert them into an apartment house consisting of fifteen units (of which apartment 3-C, the one involved in the pending proceeding, *207 was one). It is claimed by complainant that the total reconstruction costs were in excess of $90,000. Apartment 3-C was leased to one Burnett for a term commencing October 1, 1945, at a rental of $85 per month. The tenant paid the first month's rent upon the signing of the lease. However, the apartment was not ready for occupancy on October 1, and the tenant did not move in until October 24. By agreement, the rent which had been paid for October was allocated to November, and the landlord later collected from the tenant $21.25 for the October occupancy.
Complainant became subject to the Rent Regulation for Housing in the New York City Defense-Rental Area, effective November 1, 1943 (8 F.R. 13914). The regulation provides that, for housing accommodations which were rented on the freeze date, March 1, 1943, the maximum rents shall be the rents for such accommodations on that date. Complainant's maximum rents for the newly constructed apartment house were established, not under that generally applicable formula, but under § 4(e) (2) of the regulation, which provides that, for housing accommodations changed on or after November 1, 1943, so as to result in an increase or decrease in the number of dwelling units, the maximum rent shall be "the first rent for such accommodations" after such change.
In these so-called "first-rent" cases, the landlord is thus permitted to establish initially his own maximum rent instead of being required to withhold the housing units from the rental market until his proposed rents are submitted to and approved by the Office of Price Administration. It is to be anticipated that these self-determined first rents will often be set at a level higher than the rents which were generally prevailing on the maximum rent date for comparable accommodations in the defense-rental area, and thus be inflationary in effect. Therefore the regulation provides that these first rents are subject to reduction by order of the Administrator, as provided in § 5(c) (1). The downward adjustment is to be on the basis of the rent which the Administrator finds was generally prevailing in the defense-rental area for comparable housing accommodations on the maximum rent date, with appropriate allowance, in cases involving construction, to reflect general increases in costs of construction in the defense-rental area since the maximum rent date.
The need is obvious for a speedy and effective procedure for reducing all "first rents" which are out of line, in order to eliminate discrimination against landlords whose rents were frozen as of the maximum rent date, and otherwise to effectuate the purposes of the Act. Therefore the regulation requires the landlord to file with the appropriate local rent office a registration statement for each new housing accommodation "within 30 days after the property is first rented". If such registration statement is timely filed, the Area Rent Director receives prompt information of the new renting and thus may speedily proceed to review the first rent to determine whether it ought to be reduced under the applicable standard. In such case, any order by the Area Rent Director reducing the maximum rent operates prospectively only.
If, on the other hand, the landlord fails to file a proper registration statement within the time specified, he ought not to gain by his own default; and therefore § 4(e) of the regulation provides that in such case the self-determined rent received by the landlord is "subject to refund to the tenant of any amount in excess of the maximum rent which may later be fixed by an order under section 5(c) (1)." Unless the Rent Director finds that the landlord was not at fault in failing to file a timely registration statement and therefore relieves the landlord of the duty to refund, the amount of the excess must be refunded to the tenant within thirty days after the date of the issuance of the reduction order. However, if the landlord, within that 30-day period of grace, seeks a review of the Rent Director's reduction order, either by a petition for review filed with the Regional Administrator, or by a protest filed with the Price Administrator, he may obtain a stay of the order for refund, as provided in Revised Procedural Regulation No. 3, by depositing in escrow a certified check or money order in the amount of the refund payable to the tenant. See §§ 1300.214(c), 1300.215, 1300.225(a), (b), (c) and (d), and 1300.252(c), *208 of Revised Procedural Regulation No. 3, as amended (12 F.R. 1143). Such stay continues to operate during the pendency of administrative review, and further during the pendency of judicial review in this court under § 204(a) of the Act and in the Supreme Court under § 204(d). Any ultimate modification of the Rent Director's order for refund is automatically retroactive, and so much of the money on deposit is returned to the landlord as the modification requires. Thus, if the Price Administrator in protest proceedings, after a de novo hearing conforming to all constitutional requirements of procedural due process (Smith v. Bowles, Em.App., 1944, 142 F.2d 63; Yakus v. United States, 1944, 321 U.S. 414, 436, 64 S.Ct. 660, 88 L.Ed. 834) should determine, (1) that the landlord's "first rents" were not higher than the level of comparability, and hence that no reduction of rents should have been ordered by the Area Rent Director under § 5(c) (1) of the regulation, or (2) that, though a prospective reduction in rents was called for, the Rent Director was in error in making the reduction retroactive, either because in fact the landlord had filed a proper registration statement on time or because, though the filing was late, the landlord was not at fault in failing to make a timely filing, then in any such case the Rent Director's order directing a refund is retroactively set aside and the money on deposit is returned to the landlord.
We now return to a statement of the facts in the case at bar.
On December 27, 1945, the Area Rent Director issued notices of proceedings under § 5(c) (1) of the regulation for reduction of the maximum rents applicable to the various apartments in complainant's building. The notice with reference to apartment 3-C (the only one now in question) recited that the Area Rent Director, having made a preliminary investigation, proposed to decrease the maximum rent from $85 to $40 per month. By a corrected notice, he stated his intention to make such reduction retroactive to October 1, 1945, for the reason that the landlord had failed to file a proper registration statement within thirty days after first renting. The notice gave the landlord five days within which to file objections to the proposed order and written evidence in support of such objections. After extended proceedings of an informal nature, the Rent Director, on March 27, 1946, entered the order now under review, reducing the maximum rent of apartment 3-C from $85 to $67.50 per month effective as of October 1, 1945, and providing that any rent collected subsequent to October 1, 1945, in excess of $67.50 per month shall be refunded to the tenant within thirty days, unless the refund is stayed in accordance with the provisions of Revised Procedural Regulation No. 3. At the same time the Rent Director issued similar orders with reference to other apartment units in the building.
On April 24, 1946, complainant filed with the Regional Administrator an application for review of these orders of the Rent Director, including the order with reference to apartment 3-C. Taking advantage of the provisions of Revised Procedural Regulation No. 3, above set forth, complainant made the necessary deposits in escrow and obtained stays of the orders of the Rent Director in so far as they directed refunds to tenants in apartments other than apartment 3-C. But, with respect to apartment 3-C, complainant for some reason or other did not obtain a stay of the refund order.[1]
The tenant in apartment 3-C commenced an action in the Municipal Court of the City of New York on May 9, 1946, to recover the excess rental which the order of the Rent Director had directed to be refunded to the tenant. Since complainant had neither obtained a stay of this refund order nor complied with the same, the tenant's action went to judgment on June 11, 1946, in the amount of $118.30. Thereafter, in accordance with the provisions of § *209 204(e) (1) of the Act, as amended, complainant made application to the Municipal Court for leave to file a complaint in the Emergency Court of Appeals challenging the validity of the Rent Director's order of March 27, 1946, on the following ground: "Said order was made without due process of law; and in violation of official OPA policy of affording Landlord the opportunity to know all the evidence upon the basis of which the Rent Director made the order; all of which was done over the objection of applicant. Said order is therefore claimed to be void."
The application set forth as a "reasonable and substantial excuse" for complainant's failure to have presented such objection in a protest under § 203(a), 50 U.S. C.A.Appendix, § 923(a), that it had filed with the Regional Administrator an application for review and was then awaiting the outcome of such proceeding.[2] The Municipal Court, on June 12, 1946, entered an order staying action on the civil judgment and further granting leave to complainant to file in the Emergency Court of Appeals a complaint "setting forth the said objections to the validity of the order which the defendant is alleged to have violated herein." On June 19, 1946, the pending complaint was filed in this court.
This case comes to us pursuant to § 204 (e) of the Act by direct complaint against the Area Rent Director's order of March 27, 1946, instead of after administrative review of such order under the protest procedure of § 203. Section 204(e) (1) provides that, within five days after judgment in a civil proceeding brought pursuant to § 205 of the Act, 50 U.S.C.A.Appendix, § 925, "involving alleged violation of any provision of any regulation or order issued under section 2", the defendant may apply to the court in which the proceeding is pending "for leave to file in the Emergency Court of Appeals a complaint against the Administrator setting forth objections to the validity of any provision which the defendant is alleged to have violated." The court in which the proceeding is pending "shall grant such leave with respect to any objection which it finds is made in good faith and with respect to which it finds there is reasonable and substantial excuse for the defendant's failure to present such objection in a protest filed in accordance with section 203(a)." The defendant in the enforcement suit may then, within thirty days, file a complaint in this court "pursuant to * * * such leave."
Our function is, therefore, limited to determining the validity of the Rent Director's order only in so far as such validity is an issue in the tenant's pending action in the Muncipal Court of the City of New York. The order had two aspects: (1) It prescribed a maximum rent of $67.50 for apartment 3-C prospectively from the date the order was issued, and (2) it ordered the landlord to refund to the tenant any excess of rentals over $67.50 per month which the landlord had theretofore received. The landlord is not alleged to have violated the order in its prospective aspect. In the pending enforcement suit, the tenant is suing only for the refund; it is that retroactive provision of the order which the landlord is alleged to have violated.
Furthermore, in deference to the provisions of § 204(e) (1) above set forth, we held, in Fournace v. Bowles, Em.App., 1945, 148 F.2d 97, 99, 100, certiorari denied, 1945, 325 U.S. 884, 65 S.Ct. 1573, 89 L.Ed. 1999, that this court, in a 204(c) complaint, may consider only those objections which the complainant had obtained leave from the enforcement court to set forth in his complaint. As already indicated, complainant only sought, and obtained, leave to challenge the Rent Director's order on the ground that it was void ab initio because of having been issued in violation of the requirements of procedural due process. Hence we are not now concerned with the propriety of the Rent Director's refund order on the merits. We have no occasion to inquire whether in fact the registration statement was timely filed, or, if filed late, whether the landlord was "at fault" in respect thereto. Nor may we now inquire *210 whether the maximum rent for apartment 3-C should have been reduced under the applicable standard contained in the regulation, which would depend upon a factual determination whether the "first rent" set by complainant was out of line, that is, was higher than the rents for comparable accommodations generally prevailing in the area on the maximum rent date.[3]
With reference to the narrow point now in isue, as we have above defined it, there is no statutory requirement of a hearing either before the issuance of a general rent regulation or before the issuance of an individual rent reduction order pursuant to adjustment provisions of the regulation. In Bowles v. Willingham, 1944, 321 U.S. 503, 519-521, 64 S.Ct. 641, 88 L.Ed. 892, the court held that the Act was not in violation of the Fifth Amendment for failure to make provision for a hearing to landlords before an order or regulation fixing rents becomes effective. It held that the provision for subsequent administrative review by protest under § 203, followed by judicial review in this court under § 204(a), satisfied the requirements of due process. But the Supreme Court's discussion was focused on the legislative character of the basic rent regulation, affecting thousands of persons. A proceeding looking to an individual reduction order, in which the standards set forth in an adjustment provision of the regulation are applied to a particular set of facts relating to a single landlord, is quasi-judicial in character; and here it is obviously more appropriate to afford an opportunity for a hearing  not necessarily formal in character  before the reduction order becomes effective. In fact, in Revised Procedural Regulation No. 3, the Price Administrator has provided that, where an Area Rent Director on his own initiative deems it appropriate to enter an order reducing rents, "he shall, before taking such action, serve a notice upon the landlord of the housing accommodations involved stating the proposed action and the grounds therefor." (§ 1300.207) The landlord is afforded an opportunity to file objections to the proposed reduction and evidence in support of such objections. The customary practice of Rent Directors in such proceedings, so the Price Administrator has informed us, is that where the landlord files objections presenting materials in conflict with the materials being relied upon by the Rent Director, or where such objections indicate an inability on the landlord's part to answer adequately because of a lack of knowledge of the materials being relied on by the Rent Director, the Rent Director then makes "available to the landlord the materials upon which his proposed action is to be based." The procedural regulation also provides for an oral hearing before the Rent Director in appropriate cases upon request for such hearing accompanied by a showing that the filing of affidavits or other written evidence and briefs will not permit a fair and expeditious disposition of the proceeding. See Direct Realty Co. v. Porter, Em.App., 1946, 157 F. 2d 434.
There is acute controversy between the parties in this case as to whether the Rent Director made a sufficient disclosure to complainant of the materials and evidence upon which he was relying in support of his proposed reduction order, so as to afford complainant a fair opportunity to challenge and combat such evidence prior to the issuance of the order complained of. We do not state the details of this matter because, in the view we take, complainant is not entitled to a favorable judgment even if we assume that complainant was not afforded an adequate opportunity to contest the proposed order at the Rent Director level.
The refund provision of the Rent Director's order is not to be viewed in isolation, separate and apart from the administrative procedures in their entirety as established by the Act and the procedural regulation. It cannot be said that the order was void under the due process clause, when complainant, had it chosen to do so, *211 could have obtained a stay of the direction for refund before it became effective as an administrative command, and, if it succeeded in establishing the error of the refund order on the merits, could have obtained retroactive relief from such order, after a hearing before the Regional Administrator upon petition for review, or after a hearing before the Price Administrator upon a protest. In other words, opportunity was afforded for a full and fair administrative hearing before the order for refund, so stayed, should become effective. Cf. United States v. Illinois Central R. Co., 1934, 291 U.S. 457, 54 S.Ct. 471, 78 L.Ed. 909. And of course if, upon such full hearing the refund order were found to be proper on the merits, and therefore affirmed, then it would be apparent that the landlord had not been prejudiced by any lack of an adequate opportunity to be heard at an earlier stage of the administrative proceedings. See Victor v. Porter, Em.App., 1946, 157 F.2d 769, 772, cert. denied, 1947, Victor v. Fleming, 329 U.S. 801, 67 S.Ct. 491. Cf. Fury v. Fleming, Em.App., 1947, 161 F.2d 189.
It must be emphasized that, under the provisions of the Act, the primary procedure for challenging a regulation or order is via the protest route under §§ 203 and 204(a). That was the only way, under the Act in its original form. In 1944 Congress added § 204(e) to afford an alternative procedure, under the narrowly defined conditions above summarized, in cases where an enforcement suit had been commenced against an alleged violator who had theretofore failed to file with the Administrator a protest against the regulation or order in question. But a complaint filed directly in this court under § 204(e) does not, and obviously ought not to, give the complainant any greater substantive rights than if he had presented the same objection to us in a § 204(a) complaint upon administrative denial of a protest. An objection which we would not hold invalid, if raised in a § 204(a) complaint, cannot be a ground for invalidating a regulation or order if presented to us in a § 204(e) complaint. In either type of complaint, we may set aside a regulation or order only if the complainant establishes to our satisfaction that it is "not in accordance with law, or is arbitrary or capricious". § 204(b). If this case had come to us under § 204(a), we would not have declared the Rent Director's refund order invalid ab initio merely on the ground that the Rent Director had denied the landlord a fair opportunity to be heard before issuing the order (assuming such to be the fact). Before doing so we would have had to be satisfied further, on the evidence in the protest proceedings pertaining to the merits, that the Administrator was "arbitrary or capricious" in his conclusion that, on the merits, the refund order was appropriate. See Victor v. Porter, supra; Fury v. Fleming, supra. In the case at bar, complainant did not obtain leave from the Municipal Court to file a § 204(e) complaint challenging the Rent Director's refund order on the merits, either on the ground that the facts did not warrant any reduction in complainant's "first rent" for apartment 3-C, or on the ground that the reduction should not have been made retroactive under the criteria set forth in the rent regulation. Those issues are not now before us; for all we know, the Rent Director's order may have been warranted on the facts, as the Regional Administrator has held upon the petition for review.[4] Our holding is limited to the point that, if complainant was not afforded an adequate opportunity to be heard prior to the issuance of the order complained of, this in itself, for the reasons above set forth, did not render the Rent Director's refund order void ab initio.
A judgment will be entered dismissing the complaint.
NOTES
[1] The proceedings before the Regional Administrator eventuated in orders on November 27, 1946, denying upon the merits all of complainant's applications for review. On December 27, 1946, complainant filed a protest against such orders of the Regional Administrator except the order relating to apartment 3-C. These protests are presently pending before the Price Administrator, or his successor.
[2] Under the procedural regulation, if this alternative method of review should result in a denial of the application by the Regional Administrator, the applicant could still obtain a final administrative review by the Administrator himself upon filing a formal protest.
[3] In his answer to the complaint, respondent moved to strike from the complaint certain allegations having to do with the propriety of the Rent Director's order on the merits. On August 22, 1946, we entered an order denying this motion to strike "without prejudice". The motion has been renewed by respondent. For the reason above stated, we now grant such motion.
[4] See footnote 1, supra.