**SAKER et al. v. WOODS, Housing Expediter.**

**No. 444.**

United States Emergency Court of Appeals.
Heard at Warren, Ohio, Feb. 23, 1948.

Decided June 3, 1948.

132

David S. Dennison, Jr., of Warren, Ohio (Theodore R. Saker, of Warren, Ohio, on the brief), for complainants.

Charles P. Liff, Chief, Appeals Section, of Washington, D. C. (Ed Dupree, General Counsel, Robert A. Sauer, Ass't General Counsel, Betty L. Brown and Carroll A. Cahen, all of Washington, D. C., Attorneys, all of Office of Housing Expediter, on the brief), for respondent.

Before MARIS, Chief Judge, and McALLISTER and LINDLEY, Judges.

McALLISTER, Judge.

Complainants are the owners of certain housing accommodations in Warren, Ohio, for which the maximum rent date was fixed as April 1, 1941, by the Administrator. Sometime during February, 1944, complainants first rented the premises in question at a monthly rental of $65. On June 14, 1946, the Rent Director issued an order directed to complainants reducing the rent to $40 per month, and ordered complainants to refund to their tenant the sum of $725, representing the difference between the rent they had received, in excess of that finally allowed, for the period from February, 1944, to June, 1946. Pursuant to the procedure in such case provided, complainants filed their protest, and at the same time, deposited the sum of $725 to be held in escrow by the Treasurer of the United States pending the eventual decision of the case. An oral hearing was held before a Board of Review, and, in accordance with its recommendation, the protest was denied on October 16, 1947, by the Housing Expediter, who was the successor of the Price Administrator, and who is referred to herein as the Administrator. Thereafter, the present complaint was filed in this court. Complainants seek a return of the funds which they placed in escrow, as well as authorization to recover from the tenant the additional rent over that allowed by the Administrator, up to the date when relief may be granted.

This is a case involving a so-called "first rent," that is, a rent charged for premises rented for the first time after the date establishing maximum rents in a given area. In such a case, a landlord may collect and retain such rent, subject to his filing, within thirty days of the renting, a registration statement as provided by regulation.[1] After the filing of such registration statement, the Administrator may reduce the "first rent" to the rent which he finds was generally prevailing in the area for comparable housing accommodations on the maximum rent date.[2] But where first rents are collected by a landlord without filing a proper registration statement within the required time, the rent received for any rental period commencing on or after the date of the first renting, is received subject to refund to the tenant of any amount in excess of the maximum rent which may later be fixed by an order decreasing the first rent to the amount of rent generally prevailing in the area for comparable housing accommodations on the maximum rent date.[3]

In this case, although the premises were first rented by complainants in February, 1944, no registration statement was filed within thirty days thereafter, nor until April 19, 1946. On May 15, 1946, the Rent Director commenced proceedings to decrease the maximum rent for the accommodations in question on the ground that the "first rent" was higher than the rent generally prevailing in the area for comparable housing accommodations on the maximum rent date, and, thereafter, on June 14, 1946, issued the order reducing the rent. Because a registration statement had not

---

[1] Section 4(e) of the Rent Regulation. 8 F.R. 7322.

[2] Section 5 of the Rent Regulation.

[3] Section 4(e) of the Rent Regulation.

been timely filed, the Administrator also ordered refund by complainants of rents in excess of the amount finally determined, which had been collected prior to such order.

Complainants contend that the reduction of rental by the Rent Director was unreasonable and that the order of the Administrator sustaining the reduction was arbitrary and capricious, and was not supported by substantial evidence.

In justification of the amount to which the rent was reduced from the "first rent," the evidence of the Area Rent Inspector is relied upon. He personally inspected and described in an affidavit the subject unit and several allegedly comparable accommodations, and then expressed his opinion, as an expert, that, after giving due consideration to differences which would affect rental value, and after making appropriate allowances for increases in costs of certain construction added to the premises, the rent generally prevailing for complainants' accommodations in the area in question on the maximum rent date was $40 per month.

The principal issue is whether the accommodations declared to be comparable by the Inspector, and relied upon by the Administrator in establishing the maximum rent for complainants, were comparable to complainants' premises, or whether other accommodations submitted by complainants as comparables were the proper ones to consider in arriving at the rent to be fixed for complainants' premises.

The accommodations owned by complainants consisted of a two-story frame dwelling, containing six rooms, bath, breakfast room, and finished attic, together with detached double garage and black top driveway. Subsequent to the maximum rent date established by the Administrator, the premises in question had been renovated by the addition of a tile bath with tub and shower, gas hot air furnace with air conditioning unit, hot water heater, copper piping, hardwood floors, and basement lavatory. The house was weather stripped and insulated, and immediately prior to its first renting, the interior woodwork was repainted, the rooms were repapered, and new linoleum was laid in the kitchen and break-

fast room. These improvements were made during 1943 and the early part of 1944, at a cost, declared by complainants, of approximately $5,000. The Area Rent Inspector considered three other houses in the neighborhood as comparables. All of these were six-room houses, as was that owned by complainants. One of them was a story and a half house, with an attached garage, renting for $36 per month. The second of the Inspector's comparables was a two-story house, with a two-car garage, on a somewhat smaller foundation than complainants' house, and which rented for $36 a month. A third comparable was a two-story house, with a one-car garage, whereas complainants' accommodation, as has been said, included a two-car garage. This latter house rented for $35 per month. All of these comparables were declared by the Inspector to be in "fair condition," and in his opinion, the latter two houses had a rental value of $5 per month less than complainants' house. The Inspector also examined the two comparable houses submitted by complainants, one of which rented for $60, and the other, for $48, per month. He set forth his reasons for his view that these accommodations were of better quality, were better planned, with larger lots, and also gave the grounds for his conclusion that they were superior to complainants' premises and had rental values of $20 and $5 more per month than the subject accommodations. The Inspector further made observations upon the age of the various premises and the nature of the neighborhood in which they were located. With reference to the improvements made by complainants, it appeared that $1,200 was expended for certain construction completed on, or soon after, the maximum rent date. An additional $1,500 was expended thereafter for ordinary repair and equipment. For these expenditures, it was unnecessary to make any allowances in rent. With respect to the balance of $2,300 which was spent for improvements, the Board of Review found that while the Inspector did not indicate the exact amount of rental allowance made for such increased cost of construction, he did give consideration to the increased costs and did include some allowance therefor in arriving at the

maximum rental of $40 per month for complainants' accommodations. No evidence was introduced by complainants to contradict the Inspector's judgment or his statement of inclusion of an allowance for increased construction costs in complainants' maximum rental. The sum of $1.00 or $1.-50 per month therefor could well be sustained by use of the formula for allowance of such costs, as approved in Victor, et al. v. Porter, Em.App., 1946, 157 F.2d 769; and there is no reason to consider this item was not included in making up the allowance for rental, as the Inspector declared.

■ Complainants challenged the comparables used by the Inspector and relied upon by the Administrator in entering the order dismissing the protest and sustaining the rent decrease, on the ground that the so-called comparables were entirely different in type and quality from the subject accommodations. However, it appears that appropriate adjustments were made—in comparing the properties—for the differences which, in his capacity as an expert, the Inspector considered would affect the rental value. A comparable need not be identical to the subject accommodation; and, in fact, it would be almost impossible to find identical properties to use as comparables. Buildings used for this purpose need only be sufficiently similar to be regarded by an expert as of substantially equal rental value, or sufficiently similar so that an expert, taking as a standard the rent prevailing for one, and making allowances for such differences as would be reflected in rental value, would be able to determine the appropriate corresponding rent for the other. Sirianni v. Bowles, Em.App., 1945, 148 F.2d 343. It is also charged that the Inspector incorrectly stated that said premises were in "only fair condition" rather than "good condition"; that they were in a middle class neighborhood whereas they were in an "A" zoning area for residences; and that various houses in the neighborhood were about thirty years old instead of ten to twenty years old. But these matters are, for the most part, in the field of judgment and opinion, and the challenges made against them, while, in some instances, indicating small inaccuracies, are really not vital and substantial.

The evidence of the Inspector is further challenged on the ground that, although he mentioned many details of the subject accommodations and the comparables, he did not point out that complainants' house had a finished attic, floored and sealed, with a large attic closet. This circumstance, it may be said, prompted one of the members of the Board of Review to state in a dissenting opinion, that the Inspector took no notice of this feature and apparently failed to consider it in making his determination; and he commented upon the fact that, while the Inspector described differences between two-car garages and a one-car garage in detail, he made no mention of this more important item of the attic in question, which, in the opinion of the Board member, had a rental value exceeding that of an additional car space in a garage. This question, which might seem unimportant, has given some concern in the consideration of the case, for, if an Inspector's investigation and report is found to be characterized by capriciousness and carelessness, it would not constitute evidence sufficient to sustain the decision of an Administrator who relied largely upon it in making his order. See Gable Management Corp. v. Bowles, Em.App., 1945, 151 F.2d 82, 84. However, we have concluded that the failure to specify and describe this item on the part of the Inspector could not be said to be evidence, in this case, of capriciousness and carelessness. He may well have considered that in a house of this size, kind, and construction, the fact than an attic was finished or unfinished did not affect its rental value. There was no evidence introduced on behalf of the complainants that such a feature did increase the rental value of the premises; and the opinion of the dissenting member of the Board that the attic was of more value, from the standpoint of rentals, than a one-car garage, is a matter of opinion, and is not supported by any specific proofs.

■■ The question before us is whether the findings and determination of the Administrator are supported by substantial evidence. We do not weigh the evidence or attempt a selection among the various items. There is here no proof that the Administrator deliberately ignored the best

evidence in order to sustain his decision on that of secondary value. Our conclusion is that the order of the Administrator is sustained by substantial evidence.

It is urged by complainants that it was the Inspector's duty to determine the rental value of the property at the time it was first rented in February, 1944, and not upon the basis of the condition in which he found it two and a half years later; and it is claimed that there is no indication that the Inspector ever attempted to determine the rental value of the subject accommodations in 1944. The evidence in this regard is unsatisfactory, but, in a considerable degree, this is due to the fact that complainants failed to comply with the regulation by neglecting to file a timely registration statement which would have enabled the rent authorities to examine the property at the time it was first rented. Moreover, as suggested by counsel for the respondent, there is no proof that the subject accommodations had deteriorated between the time of the first renting and the time when the Inspector examined them in September, 1946. Counsel persuasively suggests that if that be the case, the Inspector saw the subject accommodations in approximately the same condition in which they were on the date of first renting.

■ Complainants, however, assert, as indicative of the arbitrary nature of the order of the Rent Director decreasing the first rent received by complainants, that such decrease was made in June, 1946, without any inspection of the premises, and that the Rent Inspector did not examine the property until the following September. In the light of the evidence, this claim is not persuasive. When complainants finally filed their registration statement more than two years late, on April 18, 1946, it would have been natural at that time, for the Office of Price Administration to take some steps to look into the matter, and if not satisfied with the rent set forth as a first rent in the registration statement, to commence proceedings to decrease it. That is exactly what was done. On May 15, 1946, less than a month after the filing of the tardy registration statement by complainants, the Rent Director gave them notice of his proposal to reduce the rent in question. It would seem only proper and logical that such action would be taken only after some kind of preliminary investigation. In this case, we do find such an inquiry. In the written notice of proceedings to reduce the rent served on complainants by the Rent Director, it is expressly stated that: "A preliminary investigation by the Rent Director indicates that the Maximum Rent for the above-described accommodations should be decreased." From the foregoing, it cannot be concluded that, even in this preliminary proceeding, the Rent Director acted without making an investigation, or in an arbitrary fashion, as contended.

■ In view of various contentions made by complainants, certain other matters should be briefly noted. In this case, evidence of the appraised value of the housing accommodations is not of importance, as the issue is whether the rent finally established by the Administrator was the rent generally prevailing for comparable housing accommodations on the maximum rent date, and whether the order of the Administrator was supported by substantial evidence.

■ Complainants further argue that a first rent may not be reduced if it is within a bargaining range for comparable accommodations on the maximum rent date. Such contention was ruled upon adversely by this court in London Terrace, Inc. v. Creedon, Em.App., 1947, 162 F.2d 722. Furthermore, it may be said that, contrary to the claims of complainants herein, the mere fact that the regulation provides that a first rent shall be the maximum rent, does not impose the burden upon the Administrator to prove that the first rent was higher than the rent generally prevailing for comparable housing accommodations on the maximum rent date. A presumption of validity attaches to the order of the Administrator. When a party files a protest, the burden is upon him to go forward with the evidence. Of course, if the protestant introduces evidence to indicate that the order was invalid or arbitrary, or not supported by evidence, it is incumbent upon the Administrator to introduce evidence to rebut such proofs. But the burden is always

upon the protestant to establish his case. As to the contention that complainants were not at fault in failing to file a timely registration statement, and, therefore, should not be subject to the refund of rent collected in excess of that finally established for the accommodations in question, we fail to find merit in this claim. In view of our determination, it is unnecessary to consider the able and interesting contentions advanced by the parties on other phases of the case.

In accordance with the foregoing, a judgment will be entered dismissing the complaint.