157 F.2d 434 (1946)
DIRECT REALTY CO.
v.
PORTER, Price Adm'r.
No. 301.
United States Emergency Court of Appeals.
Heard May 4, 1946.
Decided September 17, 1946.
George A. Ferris, of New York City (Albert Adams, of New York City, on the brief), for complainant.
Jacob D. Hyman, Assoc. Gen. Counsel, of Washington, D. C. (Richard H. Field, Gen. Counsel, Harry H. Schneider, Chief, Court Review Rent Branch, Charles P. Liff, and Marcella R. Schultz, Attys., all of the O P A, all of Washington, D. C., on the brief), for respondent.
Before MARIS, Chief Judge, and MAGRUDER and LAWS, Judges.
Heard at New York May 4, 1946.
MARIS, Chief Judge.
The sole question to decide is whether the complainant has been denied procedural due process of law by the refusal of the Price Administrator and his subordinates to grant it an oral hearing at which to offer the testimony of witnesses in opposition to the Administrator's proposal to adjust the maximum rents of one of its apartments downward. The factual background is as follows:
*435 The Rent Regulation for Housing in the New York City Defense-Rental Area established March 1, 1943, as the maximum rent date.[1] Section 5(c) (8) of the regulation[2] provides that the Price Administrator either upon his own initiative or upon application of the tenant may reduce the maximum rent from that on the maximum rent date to the average rent existing over the term of a lease if: "The rent on the date determining the maximum rent was established by a lease or other rental agreement for a period of occupancy of one or more years, which provided for a rent concession during such period of occupancy in the form of either a rent-free period or an abatement of rent."
On November 28, 1944, the area rent director sent a notice to the complainant, managing agent of 444 Central Park West, New York City, that upon application of the tenant it was proposed to adjust the maximum rent for apartment 6E from $105 a month to $100 a month because a preliminary investigation indicated that the adjustment was required by Section 5(c) (8) of the regulation. It appeared from the tenant's application, a copy of which was appended to the notice, that on the maximum rent date apartment 6E was rented under a lease for a term of two years commencing October 1, 1942, with a total abatement in rent of $120 for the term. The notice advised the complainant that if it wished to file objections to the proposed action it must do so within ten days and that it might support the objections with written evidence and concluded "If no objections and supporting evidence are filed within the above period, the Rent Director may enter an order adjusting the Maximum Rent without further notice." The complainant did not file objections although from what subsequently transpired it seems clear that its position was that it was entitled to an offsetting upward rent adjustment under Section 5(a) (5) or 5(a) (11) of the regulation.[3] On December 27, 1944, the area rent director entered an order effective beginning with the next regular rent payment period establishing the maximum rent for apartment 6E at $100 a month. An application for review was denied, a board of review recommended the denial of the protest and the Administrator denied the protest.
In this court the complainant asserts that the denial of the protest was erroneous in that the complainant has consistently been refused the opportunity to examine witnesses orally and present evidence according to due process of law; that promises made by various members of the staff of the Administrator that the complainant would be granted such an oral hearing were ignored and disregarded by other members of the same staff and that it has never been allowed to prepare and to complete an adequate record. The complainant now asserts that written proof is not adequate because there are hostile witnesses who refuse to sign affidavits and who must be subpoenaed. It urges that it has abundant proof to present to support a finding that peculiar circumstances exist justifying a reversal of the order of the area rent director. It, therefore, asks that the order of the Administrator denying the protest be set aside and that the matter be remanded to the appropriate official so that the complainant may be granted the opportunity to present its oral proof and make its record in order that a just determination may be reached on the merits.[4]
There can be little doubt that the complainant requested an oral hearing and that it believed it had been granted such a hearing for the production of oral evidence. Thus on December 7, 1944, the complainant wrote:
"In response to your form -CON D-18C- we hereby request a hearing.
*436 "We believe we have some bulky evidence to submit which would make a hearing justified and we should like very much to meet the tenant concerned at such a hearing."
On December 19th the complainant wrote one Harold Levy, of the Office of Price Administration, as follows:
"In response to your telephone call advising us in regard to the hearing requested, we will be happy to be at your office on January 4th at 2:00 P. M."
The complainant's explanation of this letter is that Levy telephoned the complainant's office and stated that the area rent director did not have hearings with the tenant present and "also indicated that he would see us whenever we brought evidence." The January 4, 1945 meeting never took place because the adjustment order was entered on December 27, 1944.
The complainant then filed an application for review of the adjustment order by the regional administrator. It still desired an oral hearing and asked the Metropolitan Fair Rent Committee to intercede. Apparently arrangements for an oral hearing were made, since by letter dated April 13, 1945 the vice chairman of the committee wrote to the regional rent attorney:
"Confirming telephone conversation with you this day, we understand that action on these two cases will be delayed pending an oral hearing which you have granted the petitioner.
"The oral hearing will be held at 2 P. M. Monday, April 23rd, 1945, at your office * * *."
When the complainant appeared with witnesses and records at the time and place designated the regional rent attorney indicated that the meeting was in the nature of a conference rather than an oral hearing and refused to take testimony of the witnesses. "There is," he said, "no such thing as a formal hearing here." This was "Because the superior conducts a proceeding de novo. They may not consider what has happened here, or they may consider the record entirely inadequate. You have a chance to make a record before the Administrator on the formal protest. If we deny your application for review you then have the right to file a formal protest with the Administrator in Washington, and there you have the right to ask that the case be heard by a Board of Review, and that Board grants you a formal hearing with official stenographers present and a complete opportunity to present any and all additional evidence by way of oral testimony."
On April 26, 1945, the regional administrator denied the complainant's application for review and affirmed the adjustment order of the area rent director. The regional administrator was himself apparently under some misapprehension as to the nature of the April 23rd meeting since in his opinion accompanying the order he said: "* * * the Applicant filed his applications for Review and requested an oral hearing. The same was held by the Regional Administrator on April 23, 1945 * * *." By reason of the remarks made by the regional rent attorney at the April 23rd conference the complainant then believed that the appropriate body to accord it an oral hearing was the board of review. Accordingly on July 23, 1945, the complainant filed its protest and asked for an oral hearing by a board of review in order to present evidence.
The Administrator denied the request for a hearing for the receipt of oral testimony but provided the complainant an opportunity to present further written evidence. In the opinion accompanying the order the Administrator pointed out that the nature and functions of a board of review are detailed in Sections 1300.236 through 1300.240 of Revised Procedural Regulation No. 3, and that such a board neither hears nor receives oral testimony but is restricted to hearing oral argument after the evidential record has been closed. He also called attention to the fact that Section 1300.228(a) of the regulation requires that one desiring an oral hearing of the protest must set forth in writing the reason why the filing of evidence in written form would not permit the fair and expeditious determination of the protest. It will thus be seen that all proceedings subsequent to this intermediate opinion of the Administrator were taken *437 by the complainant with knowledge of the procedural regulation and its requirements for the granting of oral hearings.
On October 22, 1945, the Administrator noticed the case for consideration by a board of review. At the hearing before the subcommittee of the board of review the complainant had witnesses present and renewed its motion for an opportunity to offer their testimony but was restricted to oral argument. The board of review filed a report recommending that the protest be denied. Thereupon the Administrator denied the protest.
The pertinent provisions of Revised Procedural Regulation No. 3[5] are as follows:
"§ 1300.208 * * * (a) Upon receipt of a petition for adjustment or other relief, and after due consideration, the rent director may either:

* * * * * * *
"(3) Notice such petition for oral hearing to be held in accordance with § 1300.211 of this regulation;

* * * * * * *
"§ 1300.211 * * * Any petitioner or applicant may request an oral hearing. Such request shall be accompanied by a showing as to why the filing of affidavits or other written evidence and briefs will not permit the fair and expeditious disposition of the petition or application. In the event that an oral hearing is ordered, notice thereof shall be served on the petitioner or applicant not less than five days prior to such hearing. The time and place of hearing shall be stated in the notice. A presiding officer will be appointed with all necessary powers to conduct the hearing. Any such oral hearing may be limited in such manner and to such extent as deemed appropriate to the expeditious determination of the proceeding.
"(b) * * * A stenographic report of the oral hearing shall be made, a copy of which shall be available for inspection during business hours in the appropriate regional office or defense-rental area office.
"§ 1300.228 * * * (a) In most cases, evidence in protest proceedings will be received only in written form. Experience in the consideration of protests has demonstrated that this procedure is most conducive to the fair and expeditious disposition of protests. However, the protestant may request the receipt of oral testimony. Such request shall be accompanied by a showing by the protestant as to why the filing of affidavits or other written evidence will not permit the fair and expeditious disposition of the protest.
"(b) In the event that the Administrator orders the receipt of oral testimony, notice shall be served on the protestant not less than five days prior to the receipt of such testimony, which notice shall state the time and place of the hearing and the name of the presiding officer designated by the Administrator.
"(c) A stenographic report of any hearing of oral testimony shall be made, a copy of which shall be available during business hours in the Office of the Secretary, Office of Price Administration, Washington, D. C."
The regulation thus contemplates the holding of an oral hearing in appropriate cases in the proceedings before the rent director, before the regional administrator and upon the protest. At each level, however, the right to an oral hearing is conditioned upon a showing that the filing of affidavits or other written evidence and briefs will not permit the fair and expeditious disposition of the issues. We think this a wholly reasonable prerequisite to the allowance of an oral hearing. There have been a tremendous number of petitions for adjustment and review[6] requiring disposition by the Office of Price Administration. *438 If in each such proceeding it became necessary to hold an oral hearing the administration of rent control might well break down under the tremendous burden of work which would be involved. The procedure adopted, by the Administrator is designed to screen the cases in which an oral hearing is really required for the fair adjudication of the issues. Indeed the complainant concedes that the conditioning of the right to an oral hearing is reasonable inasmuch as in a majority of cases it is possible to determine the controversy adequately on written evidence and that the Administrator and his staff could not dispose of all the applications which are made at the various levels if he were under legal compulsion to grant an oral hearing in every case solely upon request.
The Supreme Court has considered this aspect of the procedural regulation and at least by inference has approved the right of the Administrator to condition the granting of an oral hearing upon a showing of need therefor. In Yakus v. United States, 1944, 321 U.S. 414, at page 436, 64 S.Ct. 660, at page 673, 88 L.Ed. 834, the court said: "Nor can we say that the administrative hearing provided by the statute will prove inadequate. We hold in Bowles v. Willingham, 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892, that in the circumstances to which this Act was intended to apply, the failure to afford a hearing prior to the issue of a price regulation does not offend against due process. While the hearing on a protest may be restricted to the presentation of documentary evidence, affidavits and briefs, the Act contemplates, and the Administrator's regulations provide for, a full oral hearing upon a showing that written evidence and briefs `will not permit the fair and expeditious disposition of the protest'. * * * In advance of application to the Administrator for such a hearing we cannot well say whether its denial in any particular case would be a denial of due process."
As we have said it is possible that the course which the proceedings took up to the protest level were such as to mislead the complainant concerning the right to an oral hearing. The position in which the complainant now finds itself, however, is due in large measure to the fact that it failed to consult and follow the pertinent provisions of the regulations, officially published, as to the procurement of an oral hearing but relied instead upon communications which it had with personnel of the Office of Price Administration. Had the complainant consulted Revised Procedural Regulation No. 3 as early as December, 1944, when it first requested an oral hearing, it would have discovered not only that oral hearings could be obtained at three levels, namely upon petition for adjustment, upon petition for review of the rent director's action and upon protest, but also that its request for an oral hearing must in each instance be accompanied by a showing as to why the filing of affidavits or other written evidence and briefs would not permit the fair and expeditious disposition of the petition or application. Moreover it would have discovered that in each instance where an oral hearing is granted official notice of the time and place of hearing is sent the applicant and a presiding officer designated.
Whatever merit there may be in the plea that the complainant was misled by subordinates in the Administrator's office there can be none as to all proceedings following the opinion denying the request for an oral hearing before the board of review. Thereafter the complainant was not only presumed to know of the existence of the published regulation and the prerequisites to an oral hearing but did in fact know of them. Nevertheless we can find in the record no written application for an oral hearing before the Administrator which conforms, even remotely, to the conditions in the regulation to which we have adverted. This failure to conform we find completely lacking in justification.
Upon a protest the Administrator is under compulsion to consider the issues de novo, even as to an order making a specific rent adjustment. Smith v. Bowles, Em.App., 1944, 142 F.2d 63. Consequently when the complainant filed its protest it was in position to make a formal application for an oral hearing, unaffected by the prior proceedings.
*439 Procedural due process undoubtedly requires that a hearing be accorded at some stage of an administrative proceeding. As was said in Opp Cotton Mills v. Administrator, 1941, 312 U.S. 126, 152, 153, 61 S.Ct. 524, 536, 85 L.Ed. 624: "The demands of due process do not require a hearing, at the initial stage or at any particular point or at more than one point in an administrative proceeding so long as the requisite hearing is held before the final order becomes effective." As we have seen, the complainant in this case was afforded an opportunity at the protest level to procure a hearing by conforming to the procedural regulation. It forfeited that right by its failure to conform. Compare Veillette v. Bowles, Em.App., 1945, 150 F.2d 862, in which case we held that one who had failed to request an oral hearing had no standing to object that it was not accorded her.
The question remains whether Revised Procedural Regulation No. 3 conforms to the act in restricting the hearing before the board of review to an argument upon the record of the protest proceeding before the Administrator. Section 203(c) of the act, as amended, 50 U.S.C.A.Appendix, § 923(c), provides: "Any proceedings under this section may be limited by the Administrator to the filing of affidavits, or other written evidence, and the filing of briefs: Provided, however, That, upon the request of the protestant, any protest filed in accordance with subsection (a) of this section after September 1, 1944, shall, before denial in whole or in part, be considered by a board of review consisting of one or more officers or employees of the Office of Price Administration designated by the Administrator in accordance with regulations to be promulgated by him. Such regulations shall provide that the board of review may conduct hearings and hold sessions in the District of Columbia or any other place, as a board, or by subcommittees thereof, and shall provide that, upon the request of the protestants and upon a showing that material facts would be adduced thereby, subpenas shall issue to procure the evidence of persons, or the production of documents, or both. The Administrator shall cause to be presented to the board such evidence, including economic data, in the form of affidavits or otherwise, as he deems appropriate in support of the provision against which the protest is filed. The protestant shall be accorded an opportunity to present rebuttal evidence in writing and oral argument before the board and the board shall make written recommendations to the Price Administrator. The protestant shall be informed of the recommendations of the board and, in the event that the Administrator rejects such recommendations in whole or in part, shall be informed of the reasons for such rejection."
While the section is not free from ambiguity we think that it fairly supports the procedural scheme set up by the Revised Procedural Regulation of making up and completing the evidential record before the Administrator prior to his reference of the protest to a board of review for its consideration. The basic statutory provision is that before denial of a protest by the Administrator it shall upon request of the protestant be considered by a board of review. This necessarily implies that reference to such a board need take place only if the Administrator is not prepared to grant the protest upon his first consideration of it. But he can hardly decide whether to grant a protest without having all of the evidence before him.
Section 203(c) provides that the evidence offered in support of a protest which is to be considered by a board of review is to be in affidavit or other written form unless special cause is shown for the production of oral testimony. The procedure outlined by the Revised Procedural Regulation No. 3 is thus supported by the act in this respect. But the act nowhere expressly authorizes the board of review itself to take testimony. The provision of Section 203(c) is merely that the regulations promulgated by the Administrator "shall provide that, upon the request of the protestants and upon a showing that material facts would be adduced thereby, subpoenas shall issue to procure the evidence of persons, or the production of documents, or both." The requirement of Section 1300.228 of Revised Procedural Regulation No. 3 that oral testimony shall be taken before a presiding *440 officer designated by the Administrator is not inconsistent with this provision. Section 203(c) of the act does, however, specifically provide that the board of review shall hear oral argument on behalf of the protestant and thereupon consider and make recommendations to the Administrator with respect to the protest. See Suwanee Fruit & Steamship Co. v. Porter, Em.App., 1946, 156 F.2d 545.
The legislative history also supports our conclusion that the act intends that the evidential record is to be completed prior to the reference of a protest to a board of review and that the function of the board is to consider the protest on that record after hearing the protestant's oral argument with respect to it. Thus the report of the Senate Committee on Banking and Currency, which originated the amendment providing for boards of review, states:[7] "The committee has also considered the question whether opportunity for full oral hearing should be required with respect to every protest. In this connection it was pointed out that the evidence in protest proceedings usually consists of complicated economic and financial data, which lends itself more easily to written rather than oral presentation, and that the requirement of oral hearing for the presentation of such evidence would consume a disproportionate amount of the time of the Administrator's staff without benefiting the protestants and would, in fact, unduly delay protest proceedings. Therefore, the amendment does not require oral presentation of evidence, but it does assure to the protestant an opportunity to present oral argument to the members of the board concerning the conclusions which should be drawn from the evidence submitted on the issues raised by the protest."
We conclude that the provisions of the Revised Procedural Regulation No. 3 here in question are not in conflict with Section 203(c) of the act.
The Administrator has ruled[8] that if a substantive case for relief has been demonstrated in the protest proceedings and it is shown that the protestant has been prejudiced by a lack of procedural due process in the entry of the order protested the relief granted will be made effective as of the date of the original order decreasing the maximum rent. It follows that the relief which the Administrator could have afforded to the complainant at the protest level would have been legally adequate. Accordingly we conclude that the complainant, under the circumstances here described, has not been denied procedural due process of law.
A judgment will be entered dismissing the complaint.
NOTES
[1] 8 F.R. 13914.
[2] Added by amendment effective February 22, 1944. 9 F.R. 2087.
[3] The Administrator had ruled in Matter of Waylin Holding Corp. O.P.A. Docket No. MRD-NY-16P (1944), that such on offsetting claim would be entertained under these circumstances without the necessity of filing a formal petition for adjustment under Section 5.
[4] A similar contention and request was made by the complainant as to an order of February 21, 1945, whereby the area rent director adjusted the maximum rent for apartment 16C at 444 Central Park West, New York City, but was abandoned at the hearing in this court by counsel for the complainant.
[5] 9 F.R. 10484.
[6] As of April 1, 1946 and from the inception of rent control the Office of Price Administration had acted upon 1,340,955 landlords' petitions for upward adjustment of rents. During that same period landlords had filed a cumulative total of 34,401 applications with regional offices for review of orders issued by area rent directors. During the quarterly period ending March 31, 1946, the Office of Price Administration disposed of 129,828 actions for rent reductions initiated by area rent directors. At the end of March, 1946, there were docketed and awaiting decision 106,265 such actions. See Office of Price Administration Seventeenth Quarterly Report for the Period Ended March 31, 1946.
[7] Sen.Rep. 922, 78th Cong., 2d Sess., p. 11.
[8] Matter of Ambassador Apartments, Inc., 4 Opinions and Decisions (O.P.A. 1946) p. 3079; Matter of C. C. Forsyth, 3 Opinions and Decisions (O.P.A.1945), p. 3341.