## HERMAN v. WOODS.
### No. 493.

United States Emergency Court of Appeals

Heard at Washington, D. C., May 20, 1949.

Decided June 13, 1949.

Lewis Herman, New York City, for complainant.

Charles P. Liff, Chief, Appeals Section, Washington, D. C. (Ed Dupree, General Counsel, J. Walter White, Assistant General Counsel, Field Liaison and Appeals Branch, and Lloyd Weisberger, attorney, all of the Office of the Housing Expediter, Washington, D. C., on the brief), for respondent.

Before MARIS, Chief Judge, and MAGRUDER and McALLISTER, Judges.

McALLISTER, Judge.

Complainant is the owner of three apartments in New York City, which she rented for the first time in March, 1947. On June 24, 1947, the Area Rent Director reduced the rent for all apartments by three separate orders. With respect to apartments No. 1 and No. 2, the orders of the Area Rent Director reducing the rents were given retroactive effect to March, 1947, on the ground that these units had not been properly registered within thirty days of the date of the first renting, as provided by Section 4(e) of the Rent Regulation for Housing.[1] As to apartment No. 3, the Area Rent Director's order reduced the "first

[1] 8 F.R. 14663, as amended by Amendment No. 9, 8 F.R. 13390, and by Amendment 34 effective 9-13-44.

rent" charged for the newly created housing accommodation coming into existence subsequent to the date on which maximum rents were established, to comparable rents for similar housing accommodations on the maximum rent date. However, since the Area Rent Director found that a proper registration statement had been filed for this unit, the order reducing rent was not given retroactive effect, but provided that the decrease in maximum rent for such apartment would become effective on the next rent payment date. Under the lease for this apartment, the next rent payment date was July 1, 1947.

The Emergency Price Control Act, 50 U.S.C.A.Appendix, § 901 et seq., terminated on June 30, 1947. On October 24, 1947, complainant filed her protest with the Housing Expediter, setting forth that she was aggrieved by the foregoing order of the Area Rent Director. The protest was filed, presumably, under Section 203(a) of the Emergency Price Control Act. Under this section, the Housing Expediter would have no jurisdiction to pass upon the protest, and this court, under Section 204 (a), would have no jurisdiction to review the denial of the protest, unless the proceeding falls within the saving clause of Section 1(b) of the Act. The saving clause provides that, as to offenses committed or rights or liabilities incurred prior to the termination date of the Act on June 30, 1947, "the provisions of this Act and such regulations, orders, price schedules, and requirements shall be treated as still remaining in force for the purpose of sustaining any proper suit, action, or prosecution with respect to any such right, liability, or offense."

In her protest against the orders of the Area Rent Director, complainant claimed that proper registration statements had been filed for all three of the apartment units within thirty days of their first renting, and that the rents charged by complainant were not in excess of those charged for comparable accommodations on the maximum rent date.

Upon protest being filed, the Housing Expediter granted the protest, in part, and dismissed it, in part.

As to apartment No. 1, the complainant, on the entry of the order of the Area Rent Director, deposited in escrow the amount of the rent in excess of that fixed in such order, as provided in the procedural regulation. The Expediter assumed jurisdiction with reference to such unit, and found that the registration statement had been timely filed, and that the Area Rent Director was, therefore, in error in making the order reducing the rent for this unit retroactive. This allowed complainant to retain the rent collected up to June 24, 1947, the date of the Area Rent Director's order, relieving her of the necessity of making refund for any rent which she had collected up to that time in excess of the amount fixed in such order. However, the Expediter did not review the merits of the rent reduction, presumably on the ground that the Area Rent Director's order of June 24, 1947 would not be effective prospectively until the next rental date of July 1, 1947, and that, therefore, in that respect, the order did not relate to any right or liability incurred prior to the termination of rent control on that date, and, accordingly, would not be subject to the jurisdiction of the Expediter by virtue of the saving clause of Section 1(b) of the Price Control Act heretofore referred to. All of the premises here in question are assumed to have been decontrolled on July 1, 1947, as far as federal rent control is concerned.

As to apartment No. 2, the Housing Expediter dismissed the protest on the ground that he did not have jurisdiction to determine the rent for such apartment. Although it is not certain from the record before us, the facts with respect to this apartment and apartment No. 1 appear to be the same in so far as timely filing of registration statements is concerned. But the dismissal of the protest as to apartment No. 2 left standing the retroactive order of the Area Rent Director with respect to this unit, and required repayment by complainant of the rent collected in excess of the amount therein fixed. The basis upon which the Housing Expediter concluded he was not empowered to review the order with respect to apartment No. 2 seems to have been that there had been no

deposit in escrow by complainant of funds, representing the amount in excess of the rent fixed by the Area Rent Director, to abide final decision, thereby staying the operation of the Director's order with regard to refund.[2] The Expediter, apparently because of this fact, ruled that he had no continuing jurisdiction to determine the rent for this unit under Section 203(a) of the Price Control Act, the provisions of the statute not remaining in force except by virtue of Section 1(b) as to rights or liabilities incurred prior to its termination on June 30, 1947. Since no enforcement proceeding was imminent or pending and no provision for the holding in escrow of any funds would be affected by a determination of the propriety of the refund requirement, it is argued by the Housing Expediter that there were no facts present giving him jurisdiction to determine rents and refunds in view of the statutory provisions providing for the expiration of such powers on June 30, 1947.

As to apartment No. 3, the Area Rent Director's order reduced the "first rent," that had been theretofore collected, and provided that the decrease should become effective prospectively only, in view of complainant's having filed a proper registration statement within thirty days of the first renting. There would, therefore, be no refund requirement as to this apartment; and the decrease would be effective on the next rent payment date—in this case, July 1, 1947—although the Price Control Act terminated on June 30, 1947. While the Area Rent Director's order with respect to apartment No. 3 is not before us for review, the foregoing facts with respect to such apartment are emphasized by complainant as indicating the time when the Area Rent Director provided that the reduction of rents of such apartment should become effective, and the time when he should have provided that the reduction of rents on all the apartments, similarly situated, would become effective.

On review before this court, complainant contends, first, that in setting aside the Area Rent Director's order as to retroactivity with respect to apartment No. 1 on the

ground that a proper registration statement had been filed within thirty days of the first renting, Housing Expediter should have further provided that the reduction of rent specified in the Rent Director's order would be effective as of the next rent payment date, namely, July 1, 1947, instead of on the date of the entry of such order, June 24, 1947. Complainant also contends that the Housing Expediter should have made the Area Rent Director's order reducing the rent of apartment No. 2 effective as of July 1, 1947. In advancing the foregoing contention, complainant submits that since the order reducing the rent for apartment No. 3, heretofore mentioned, was made effective as of the next rental date, July 1, 1947, it should follow that the order reducing rents for the other apartments, rented by complainant under the same circumstances, should likewise become effective on July 1, 1947.

In view of the fact that the established rents for all of the various apartments here in question are assumed by the parties to have been decontrolled July 1, 1947, as far as the federal housing act is concerned, and since it was, therefore, unnecessary for the Housing Expediter to determine whether rent reductions were justified for any period thereafter, the question naturally arises why complainant is concerned with having a determination that the order reducing the rents should specifically provide that such reduced rents would be effective on July 1, 1947. In explanation of this paradoxical situation, complainant says that the reason she seeks to have the order reducing rents provide that it be effective as of July 1, 1947—although the Emergency Price Control Act terminated on June 30, 1947, and her premises by virtue of the provisions of Section 202(c) (3) of the Housing and Rent Act of 1947, 50 U.S.C.A. Appendix, § 1892(c) (3), became federally decontrolled on and after July 1, 1947—is that the local rent authority of New York City then took up the burden and provided for local rent control on and after July 1, 1947. Complainant says that if there were no federal maximum rent in effect at the time the New York local rent control took

---

[3] Rent Procedural Regulation No. 1, Section 840.27, 12 F.R. 5919.

effect, her maximum rent under the local law would be the first rent charged on or after July 1, 1947. It is obscure, from the record before us, what the New York maximum rents were based upon. From what can be gathered of the views expressed by government counsel, the New York maximum rents were based upon the rents theretofore established and existing under the Emergency Price Control Act. The local New York maximum rents seem, therefore, to have been based upon the federal maximum rents in effect on June 30, 1947. If, therefore, complainant's federal maximum rent in effect on the latter date was the "first rent" which she had been collecting rather than the reduced rent which the Area Rent Director had determined in his order of June 24, 1947, she would have been entitled to this "first rent" as the maximum rent, under the local rent control, rather than the lower reduced rent. Although federal rent control terminated on July 1, 1947, the maximum rent date for New York City rent control would seem to have been fixed, not as of that date, but as of the day before, June 30, 1947. That appears to be the reason why complainant now argues that the Housing Expediter should have determined in the protest proceedings that the "first rents" were still in effect on June 30, 1947, and that the reduction of rents, as ordered by the Area Rent Director, would not have been effective until thereafter, on the next rent payment date, which would have been July 1, 1947.

Whatever the actual fact as to what would have been the complainant's maximum rents under the New York rent control law, she insists that she would receive some sort of benefit or advantage if the order reducing rents in this case became effective on July 1, 1947, rather than on any date prior thereto; and her counsel vigorously contends that the order reducing rents should have been given effect as of July 1, 1947, and urges that since the orders reducing rents should have been made effective as of July 1, 1947, by order of the Area Rent Director, the Housing Expediter should have said so "officially," and himself have made such order.

The Housing Expediter, however, as above mentioned, made no determination with respect to the proper maximum rent or the reduced rent with respect to any of the apartments here in controversy but merely set aside the retroactive order of the Area Rent Director as to apartment No. 1, for the reason that, contrary to the finding of the Rent Director, complainant had filed a proper registration statement within thirty days of the first renting of the unit in question.

In reply to complainant's contention that the Housing Expediter should have provided in his order setting aside the retroactive rent reduction order of the Area Rent Director, that the reduced rent therein specified should become effective on the next rent payment date, the Expediter insists he was right in dismissing complainant's protest in so far as it related to periods on and after June 24, 1947, the date of the Area Rent Director's order, on the ground of lack of jurisdiction to make any orders affecting the rent for such subsequent period. As already stated, the provisions of the Emergency Price Control Act terminated on June 30, 1947, except "that as to offenses committed, or rights or liabilities incurred, prior to such termination date, the provisions of this Act and such regulations, orders, price schedules, and requirements shall be treated as still remaining in force for the purpose of sustaining any proper suit, action, or prosecution with respect to any such right, liability, or offense." Section 1(b).

The issue on this point, then, is whether, under Section 1(b), the Housing Expediter had authority to modify the Area Rent Director's order, and to provide that the rent decreases would become effective as of July 1, 1947. As far as concerned its prospective operation, the Area Rent Director's order did not relate to any right or liability incurred prior to the termination of the Act. It, accordingly, follows that subsequent to the termination date of the price control statute, the Act would not have been treated as still remaining in effect for the purpose of sustaining any action with respect to the prospective operation of the Area Rent Director's order, and the Housing Expediter, therefore, had no jurisdiction to make any order with respect thereto.

Even though it were assumed that there was jurisdiction in the Housing Expediter in the protest proceedings to provide that the reduced rent should become effective as of July 1, 1947, it is to be said that there was no requirement that he do so. The order of the Area Rent Director reduced the rent and gave the order immediate effect on June 24, 1947. Without consideration of the retroactive feature which was set aside by the subsequent action of the Housing Expediter, the practical effect of the Rent Director's order was that, since the rent was payable monthly in advance, the reduced rent would not have been paid by the then tenant until July 1, 1947—if the Emergency Price Control Act had continued in force, and if the tenant had continued to hold until that date. However, as the Housing Expediter suggests in his brief, if the tenant had vacated on June 24, 1947, and a new tenant had taken possession prior to July 1, 1947, the maximum rent chargeable to the new tenant would have been governed by the order of the Area Rent Director which had reduced the "first rents" charged.

It is true that as to apartment No. 3, the Area Rent Director ordered a reduction of rents prospectively, to take effect on the next rental payment date; and it seems logical to say that if the Rent Director had not been in error in making his order reducing rents for apartments 1 and 2 retroactive, he would, in all likelihood, have made his orders reducing rents for these units effective prospectively as of July 1, 1947, in the same way that he did with respect to apartment No. 3. Moreover, the Housing Expediter would, presumably, not have interfered with such effective date for the prospective payment of the reduced rents. But that did not take place, and there is no use discussing what could have, or might have, been done. If the rent, as reduced by the Area Rent Director, was the rent received for comparable housing accommodations on the original maximum rent date, there appears no equitable reason why, because of action or inaction on the part of the federal authorities, complainant should receive a higher rent under the local New York rent control. And, if through orders of the federal authorities

during the last week of federal rent control, complainant's rent was reduced below what she would otherwise have been entitled to receive under the New York rent control law, she undoubtedly had the right to seek a remedy before the local rent authority; but she has taken no such action, and her counsel has declared to the court that she has not ascertained what rights she might have in this respect under the local law.

▮ It is our conclusion that, in view of the foregoing, complainant is barred, under the Act, from any determination that the order reducing the rent should have been effective July 1, 1947; nor does it seem that the circumstances of the case render such a conclusion, based strictly upon the statue, inequitable.

Complainant finally contends that, in view of the timely filing by her of a registration statement for apartment No. 2, the Housing Expediter should have granted her protest and set aside the Area Rent Director's retroactive order providing for refund of rents collected in excess of the amounts fixed in such order, and that complainant should, accordingly, be allowed to retain the rents collected for this apartment from the time of its first renting up to June 24, 1947, the date of the Area Rent Director's order, free of any obligation to make refund to the tenant of such apartment. To this claim, the Housing Expediter responds that since there was no deposit in escrow of the amount of the refund ordered by the Area Rent Director (as provided by Rent Procedural Regulation No. 1, Section 840.27) and no enforcement suit pending or imminent, there is nothing upon which to base jurisdiction in the Housing Expediter to set aside the order of the Area Rent Director retroactively reducing the rent for apartment No. 2, inasmuch as the Emergency Price Control Act terminated prior to the protest proceedings, and there is no longer any power left to the Housing Expediter or to the Emergency Court of Appeals to function, except within a limited residual jurisdiction, which is not here present. Section 1(b). 50 U.S.C.A.Appendix, § 901(b).

The issue on this aspect of the case is whether there were any rights or liabilities

with respect to apartment No. 2 incurred prior to the termination of the Emergency Price Control Act, for which the statute, under Section 1(b), would be treated as remaining in effect for the purpose of sustaining any suit, action, or prosecution with regard to any such right, liability, or offense.

Complainant has shown that instead of making a deposit in escrow to insure payment of the refund required by the order of the Area Rent Director, as provided in the procedural regulation, she executed a contract with the tenant of the apartment in question in which she bound herself to pay the amount specified to be refunded, provided that such amount were directed to be paid to the tenant on final adjudication. This, complainant asserts, is sufficient to bring the liability under such contract within the saving clause of Section 1(b) as a right or liability incurred prior to the date on which the Act terminated. It was only because complainant had made a deposit in escrow with respect to apartment No. 1 that the Housing Expediter assumed jurisdiction as to that unit; it was because she neglected to make such a deposit with respect to apartment No. 2 that he appears to hold that he had no jurisdiction as to that unit. Complainant's liability under the contract was a continuing liability. Under the saving clause of Section 1(b), was such a liability sufficient to continue jurisdiction in the Housing Expediter, and now, in this court— subsequent to the termination of the Act— to set aside the retroactive order of the Area Rent Director?

Prior to the termination of the Emergency Price Control Act, the Area Rent Director had ordered a refund, and complainant had not complied with the order. Her liability to make the refund was still in issue at the time the Act terminated. Deposit in escrow of the amount of the refund, to be distributed in accordance with the final disposition of the proceedings, stays the landlord's obligation to refund, according to Revised Rent Procedural Regulation 1. Failure to deposit in escrow does not foreclose the landlord from review of the order. In this case, the landlord and tenant, by their private agreement, clearly intended that the liability on the part of complainant, under the Area Rent Director's order, to make refund to the tenant, should continue and abide final disposition of the proceedings. This agreement merely continued the liability, or one of the liabilities, of the landlord, incurred prior to the termination of the Act. We do not construe the statute as narrowly as does the Housing Expediter, who contends that Section 1(b) was intended to preserve jurisdiction only where necessary to vindicate rights and liabilities under an order, regulation, or price schedule, but not under a private agreement of the kind before us. The liabilities over which jurisdiction is preserved to this court, after the date of termination of the statute, are not so strictly limited, either by the language of the statute, or by any reasonable construction thereof. "Liabilities incurred prior to the lifting of controls are not thereby washed out. * * * And Congress has explicitly provided that accrued rights and liabilities under the Emergency Price Control Act are preserved whether or not suit is started prior to the termination date of the Act." Fleming v. Mohawk Wrecking & Lumber Co., 331 U.S. 111, 119, 67 S.Ct. 1129, 1133, 91 L.Ed. 1375.

■ We are of the opinion that the liability incurred in this case, prior to the termination of the Act, to make refund, and the continuation of that liability by virtue of the contract beween the landlord and tenant, was a liability within the meaning of Section 1(b) of the Act, and that the Act is, accordingly, to be treated as still remaining in force after its termination date for the purpose of sustaining any proper action with respect thereto.

If the circumstances with respect to apartment No. 2 were the same as apartment No. 1, the Housing Expediter should have set aside the retroactive order reducing rents for apartment No. 2 which was entered by the Area Rent Director. From the rather meager evidence on this point, it seems that the circumstances with respect to the two apartments were the same; but the proofs do not clearly disclose the facts with respect to apartment No. 2. The case will, therefore, be remanded to the Housing Expediter for determination of this issue.

In accordance with the foregoing, a judgment will be entered, setting aside the order of the Housing Expediter in so far as he dismissed the protest with respect to apartment No. 2, and remanding the case for further proceedings consonant with this opinion.