192 F.2d 83
 REINES
v.
WOODS.
 No. 513.
 United States Emergency Court of Appeals. Heard and Submitted at Cincinnati, Ohio.
 May 22, 1950.
 Resubmitted September 28, 1951.
 Decided October 31, 1951.
 
 Walter K. Sibbald, Cincinnati, Ohio, for complainant.
 Charles P. Liff, Chief, Appeals Section, Washington, D. C., Ed Dupree, Gen. Counsel, J. Walter White, Asst. Gen. Counsel, Field Review and Appeals Branch, Washington, D. C., and Philip Travis, Atty., Silver Springs, Md., all of the Office of Housing Expediter, on the brief, for respondent.
 Before MARIS, Chief Judge, and McALLISTER and LINDLEY, Judges.
 LINDLEY, Judge.
 
 
 1
 Complainant, owner of a single-family residence, rented it, on August 7, 1945, for $50 per month. Although this was the first rental, the owner failed to register the property within thirty days thereafter as required by law. However, in May, 1946, after announcement in the local press that the Rent Director proposed to require registration of all rental property in the Cincinnati Defense Area, complainant decided to register and proceeded to do so.
 
 
 2
 Subsequently, on September 16, 1946, the Director mailed complainant a notice that, on the basis of an investigation indicating that the rent charged by complainant was excessive, he proposed to reduce the maximum rent from $50 to $30 per month, retroactive to the first rental date. Complainant objected that the rent for comparable housing accommodations was not less than $50 per month and, further, that, in any event, the order should not be made retroactive because the "certificate registering said property was filed in the Office of the Rent Director prior to June 1, 1946, and this proceeding was not commenced within three months after date of filing such registration." In support, complainant submitted the affidavit of her husband, who, in addition to averring that, in his opinion, comparable housing accommodations rented for not less than $50 per month, also stated that he had prepared and filed the registration statement "either during the week preceding or during the week following the Cincinnati May Festival, and prior to June 1, 1946 * * *." Complainant also requested that her attorney be given access to the evidence considered by the Director and afforded an opportunity to offer additional proof. Thereafter the Area Office wrote complainant's counsel, listing the properties which the Director regarded as comparables and informing him that the registration was "stamped in our office on June 17, 1946." The attorney, in a telephone conversation with the Examiner, urged that the Director was not justified in holding that the date of the stamp and the date of filing were the same.
 
 
 3
 On March 5, 1947, a final order was issued reducing the rent on the premises retroactively. Complainant filed an application for review and requested an oral hearing, averring that the information essential to a determination of the questions involved (" (1) when was the registration statement filed and (2) what comparable properties were considered") could not be obtained by affidavits. The Expediter replied that he would not grant a formal oral hearing, "since no written evidence has been submitted showing such hearing is necessary for a proper determination of the facts in the case." The letter pointed out that a list of the comparable housing accommodations on which the Director relied had been furnished complainant and that "No written evidence has been submitted in rebuttal of the Rent Director's comparables nor do you claim the late filing of the application was made without fault." Complainant's attorney protested by letter of July 9, 1947, that the Expediter had "arbitrarily" assumed "that the original registration was filed on June 17, 1946, though this is one of the issues of fact sought to be considered in this review" and insisted that an oral hearing was necessary. Without responding to this letter, the Regional Administrator, on July 17, 1947, issued an order affirming the Director's determination. When complainant failed to comply with the order, an enforcement action was instituted against her in the District Court, which, pursuant to Section 204(e) of the Emergency Price Control Act of 1942, as amended, 50 U.S. C.A.Appendix, § 924(e), stayed the proceeding and granted to complainant leave to file in this court, a complaint setting forth her objections to the validity of the Director's order.
 
 
 4
 Complainant's attack on the order of March 5, 1947, rests upon her contentions that, (1), the Rent Director did not commence his proceeding to reduce the rent within three months after registration of the property and was, therefore, precluded from making the order retroactive, (2), the order reducing the rent was arbitrary, (3), the action of the Regional Administrator, in affirming the order was arbitrary, capricious, and without authority in law, and, (4), throughout the proceeding she was denied due process of law. Respondent, on the other hand, insists that the reduction order was lawful in all respects, and that its affirmance by the Regional Administrator was entirely proper.
 
 
 5
 Since it is admitted that complainant's registration statement was not filed within thirty days of the first rental of the subject property, a retroactive rent reduction order was justified, under the provisions of Section 4(e) of the Rent Regulation, only if the order was "issued in a proceeding commenced by the Administrator within three months after the date of filing such registration statement." Here, the proceeding to reduce the rent was begun on September 16, 1946; consequently, if complainant's registration statement was filed on or before May 21, 1946,[1] the retroactive provision in the order of March 5, 1947, was invalid. Complainant, however, although she contends that the proceeding was not begun within the prescribed period, nowhere asserts that the registration statement was filed on or before May 21. Her husband, by affidavit, avers that he personally filed it and that he was not in Cincinnati on June 17, 1946, the date stamped on it, but he does not state that it was filed on or before May 21. In his first affidavit, he avers merely that it was filed "prior to June 1, 1946"; in his second, that an article relative to the registration of rental property appeared in the newspapers "about the middle of May 1946," and that "the next day after that article appeared I procured the forms for registration, filled them out, and took them to the Rent Office within two or three days after the newspaper article appeared." The first business day after the first publication was May 20. It is extremely doubtful that such vague and indefinite testimony, even if uncontradicted, would support a finding that the registration was filed on or before May 21.
 
 
 6
 The Expediter, in his statement reviewing the order of the Area Rent Director, held that complainant's evidence established no specific date of filing and fell far short of demonstrating that the statement was filed before May 22. Remarking that the newspaper item referred to appeared on Friday, May 17, 1946, and that Reines stated he procured the forms the next day after that article appeared, the Expediter observed that the next business day was Monday, May 20, 1946. He held further that Reines' recollection of the filing date might, accordingly, be assumed to be erroneous by at least two or three days after the article appeared, and that, in any case, his statement could hardly support a conclusion that the registration statement was filed on or before May 21, 1946. Moreover Reines' affidavit sets forth that he personally delivered the registration statement to the Area Rent Office, at 810 Walnut Street, Cincinnati, two or three days after the middle of May 1946. The undisputed fact, however, is that the Area Rent Office at that address was not opened until May 27, 1946. Consequently, Reines' affidavit is completely erroneous on this important aspect of this case. Moreover, Reines' testimony is not uncontradicted; aligned against it are the affidavits of the Area Rent Director, the Supervising Examiner, and a clerk in the Area Rent Office, all of which state, in effect, that all papers and forms received by the Rent Office were stamped on the actual date of their receipt.
 
 
 7
 Add to this the presumption of regularity which attaches to official acts, a presumption which can be overcome only by "clear evidence to the contrary", United States v. Chemical Foundation, 272 U.S. 1, 14, 15, 47 S.Ct. 1, 6, 71 L.Ed. 131; Roupp v. Woods, Em.App., 177 F.2d 149, 152, and it becomes clear that it is not for this court to upset the administrative determination that complainant's registration statement was filed on the date stamped thereon, for, in view of their marked vagueness and insufficiency with respect to dates, the affidavits of complainant's husband do not constitute "clear evidence to the contrary." Consequently, on review of the evidence, we are of the opinion that the proofs amply justify the finding that the proceedings were commenced within ninety days of the filing of the registration of the housing accommodations, on June 17, 1946, and that the premises were, therefore, subject to retroactive reduction of rents.
 
 
 8
 Complainant's contentions that the Regional Administrator's affirmance of the order of March 5, 1947, was arbitrary and that she was denied due process of law both rest, in final analysis, on the fact that she was not, at any stage of the proceedings, accorded a formal oral hearing. Although there is, as respondent suggests, no constitutional requirement that such a hearing be granted, Direct Realty Co. v. Porter, Em.App., 157 F.2d 434, Section 1300.216 of Revised Procedural Regulation No. 3, 12 F.R. 1106, provides for a hearing for taking oral testimony upon a showing that affidavits or other written evidence will not effectuate a fair disposition of the matter in controversy. Complainant, although informed of this provision, made no such showing. True, it was urged, in the letter of June 10, 1947 (Exhibit 4), that the "information which the landlord seeks to have heard cannot be obtained by affidavits", but this bare assertion, unsupported by averments of fact, can hardly be said to constitute compliance with the regulation. Consequently, it does not appear that the refusal to grant an oral hearing, when viewed in the light of complainant's failure to comply with the regulations governing the granting of such a hearing, was either arbitrary action on the part of the Regional Rent Administrator or a denial of due process. Direct Realty Co. v. Porter, supra. See also 150 East 47th St. Corp. v. Creedon, Em.App., 162 F.2d 206; Abbet Holding Corp. v. Woods, Em.App., 167 F.2d 472.
 
 
 9
 Complainant asserts that subsequent to the expiration of the Act, protest proceedings were no longer authorized; that she could not have filed a protest in this case and, as a consequence, was denied a hearing. During the past four years, when within Section 1(b) of the Act, protest proceedings have been entertained in price and rent cases, boards of review appointed and protests disposed of, since termination of the Emergency Price Control Act. Roupp v. Woods, Em.App., 177 F.2d 149; Agostini Brothers Building Corp. v. Woods, Em.App., 176 F.2d 906; Herman v. Woods, Em.App., 175 F.2d 781; Braun v. Woods, Em.App., 174 F.2d 831; Mason v. Woods, Em.App., 172 F.2d 857. Indeed the holding that protest proceedings may be carried on in cases involving the continuing jurisdiction of this court under Section 1(b) is a necessary corollary to our repeated rulings that we retain jurisdiction of such cases despite termination of the Act. Since complainant did not pursue the protest proceedings authorized in such cases, her claim based on alleged denial to her of due process can not be sustained.
 
 
 10
 Upon a prior hearing, May 22, 1950, we found that, inasmuch as the record disclosed no substantial evidence of comparable rents, the order reducing the rents in question was without support. Thereafter the Housing Expediter filed a petition for stay of judgment, rehearing and modification of judgment. In pursuance of that motion, we entered an order vacating the judgment, withdrawing the opinion filed, granting leave to both parties to introduce additional evidence before the Expediter as to comparable rents and directing that a transcript of such evidence be certified and filed in accord with our rules. Following this, after due notice to complainant, the Area Office, on January 29, 1951, incorporated in the record the report of the Examiner, dated September 11 and 12, 1946, the Inspector's Rent Analysis Computation Record, dated October 23, 1946, and the affidavit of Elmer S. Weber, Supervising Examiner of the Area Office, sworn to on January 19, 1951. The Expediter supplied complainant with copies of these documents and offered her opportunity to present "evidence in rebuttal to the aforesaid matter." Complainant having offered no further evidence, the additional evidence was included in the supplemental transcript filed in this court May 7, 1951. Consequently the record now before us includes the documents mentioned.
 
 
 11
 The first additional document is the Report of the Regional Inspector, dated September 11, 1946, and filed with the office on September 12, 1946. The instrument bears a stamp reading "Oct. 23, 1950, Cincinnati." Complainant contends that this document should be disregarded because of the apparent ambiguity in dates, which she says, indicates that the instrument could have been executed after entry of our order allowing additional evidence to be taken. However, by affidavit, Mr. Liff, Chief of the Appeals Section of the Office of the Housing Expediter, declares that he forwarded the document to the Cincinnati Office on October 20, 1950 and that it is his belief that the October 23, 1950 date appearing thereon indicates the date of receipt from his office. Further substantiating this position is a photostatic copy of a letter of the General Counsel addressed to the Area Rent Attorney of Cincinnati requesting additional investigation of the Reines rental.
 
 
 12
 The Report covers the complainant's property. It describes the premises as a one story, four room house with garage attached. It observes that the house has no basement, furnace, or gas line; that it has an oil hot water heater, but that the tenant pays the water bills. It states that the interior paint, floors and bathrooms are in good condition, the exterior paint and kitchen in fair condition, the equipment in poor condition, and that the comparable rent in the area is $30.
 
 
 13
 The second document is a Rent Analysis Computation Record on Conversions, dated October 23, 1946. In this is found a comparison of the premises in question with four comparable units. It is shown that all of the units investigated and compared provide accommodations similar to those of the Reines property except that each of them has laundry facilities, a facility lacking on the Reines premises. The rents of the comparables ranged from $23 to $35. However, the examiner, in comparing these with the Reines property, deducted one dollar to compensate for the lack of laundry facilities on complainant's property. Thus the adjusted rent span for comparables was from $22 to $34. Both documents were executed prior to the Administrator's final affirmance of the Director's order on July 17, 1947. The Inspector found that the "approximate middle rental range" of these comparables was $29.10 and entered as the proper maximum rent for complainant's property, $30.
 
 
 14
 Finally the respondent incorporated in the transcript the affidavit of one Elmer S. Weber, Supervising Examiner in the Cincinnati Area Rent Office, executed January 19, 1951. The affiant deposes that during the week beginning November 19, 1950, he personally examined the premises described in the Rent Analysis Computation Record on Conversions. He declares that he found the units comparable to the property in question; that the rental range was from $23 to $35, but that in one instance the rent was abnormally low and should equitably have been $30; that the middle range of the comparables should be $32.50; that $5 should be deducted from this figure in computing the rent of complainant's property due to lack of laundry facilities, furnace, basement, and city gas line; that the maximum legal rent for the complainant's property should be $27.50. The affiant gives a rather detailed description of all of the comparables, and also a description of the complainant's premises. The probative value of the affidavit is attacked because although the premises may have been comparable in November, 1950, this was not necessarily true in August, 1945. Yet complainant offers no evidence that such is the fact.
 
 
 15
 We are of the opinion the respondent has now produced substantial evidence to sustain his order in accord with the ruling of the Supreme Court in Interstate Commerce Commission v. Louisville & Nashville Railroad Co., 227 U.S. 88, 33 S.Ct. 185, 57 L.Ed. 431. This is reinforced by the fact that at no stage has complainant attempted to refute the respondent's evidence of comparability, save by the affidavit of her husband, who was not shown to possess any competency in matters of rental values of real estate. His affidavit merely stated that, in his opinion, comparable accommodations rented for $50 per month. There was no showing af any factual basis for the opinion. Under 50 U.S.C.A.Appendix, § 924(b) the complainant must sustain the burden of showing that the order was "arbitrary or capricious"; otherwise, she must fail. No longer can she successfully demur to the evidence, for there is now ample proof in the record to sustain the order.
 
 
 16
 There remains one other point which we probably should consider. Complainant contends that the order was void when initially entered and, as such, void when the Act expired on June 30, 1947. Therefore, she contends, no liability against her attached which could be continued under Section 1 (b) of the Act, because no liability had been incurred prior to expiration of the Act. This argument is premised on two contentions:
 
 
 17
 1) respondent's denial of procedural due process to complainant,
 
 
 18
 2) lack of proof of the comparability of property upon which to base the order. The first of these two contentions has been discussed previously. However, complainant's second proposition warrants some attention. Complainant appears to assert that at the time the order was initially rendered, respondent did not produce sufficient proof upon which to base his decision, and that respondent cannot avail himself of the affidavit of Elmer Weber, executed in January, 1951, to bolster a decision rendered in 1946. Though we doubt that complainant's position with regard to this affidavit is sound, but admitting arguendo that it is, we think that the two other documents executed in September and October, 1946, and available to the Director and Administrator at the time of their decisions, are sufficient to sustain the order, which, thus supported by sufficient evidence when entered, was valid and imposed a liability on the complainant as of March 5, 1947, prior to expiration of the Act on June 30, 1947, and constituted an existing liability jurisdiction over which was continued under Section 1(b) of the Act.
 
 
 19
 Judgment will enter dismissing the complaint.
 
 
 
 Notes:
 
 
 [1]
 This date is arrived at by adding to the three months specified in the Regulation the twenty-five day "hiatus" period provided for by Section 18 of the Price Control Extension Act of 1946, 50 U.S.C.A. Appendix, § 901a note