Arnold SCHLEICH, alias Joseph
Ring, Plaintiff,

v.

James W. BUTTERFIELD, District Director of Immigration and Naturalization at Detroit, Michigan, Defendant.

Civ. A. No. 14220.

United States District Court
E. D. Michigan, S. D.
Jan. 16, 1957.

Bernard J. Fieger, Detroit, Mich., for plaintiff.

Fred W. Kaess, U. S. Atty., Dwight K. Hamborsky, Asst. U. S. Atty., Detroit, Mich., for defendant.

LEVIN, District Judge.

The plaintiff in this action, a native of Germany and an alien, is seeking judicial review of an order of deportation. There are no factual issues involved and the defendant has moved for summary judgment.

The plaintiff was ordered deported after a hearing held in Detroit, Michigan on January 9, 1953. The Special Inquiry

Officer of the Immigration and Naturalization Service found, which findings were approved by the Board of Immigration Appeals, that the plaintiff entered the United States in 1923; that he was a member of the Communist Party of the United States from 1933 to 1936; and that he was a member of the Young Communist League from 1929 to 1934. Neither the plaintiff nor any one else offered themselves as witnesses in his behalf.

Under 8 U.S.C.A. § 1251(a) (6) (C), as enacted 1952, aliens who at any time after entry were members of the Communist Party of the United States, or of any "section, subsidiary, branch, affiliate, or subdivision" of the Communist Party of the United States, are deportable.

The plaintiff alleges that he has been denied due process of law in that the record fails to show that the officers who conducted the proceedings were eligible under, and designated according to, the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq. No defect is apparent on the face of the record and plaintiff specifies none. The activities of the governmental officials are therefore presumed to have been regular. Reines v. Woods, Em.App.1951, 192 F. 2d 83.

Plaintiff also contends that he was denied due process because the Inquiry Officer and the Examining Officer, as employees of the same governmental agency, were subject to common control. Thus, plaintiff claims that his judge and prosecutor were essentially one person. This arrangement has been held not to deprive a person of due process. Marcello v. Bonds, 1955, 349 U.S. 302, 311, 75 S.Ct. 757, 762, 99 L.Ed. 1107:

"As noted above, the only complaint which petitioner can urge concerning the hearing procedures in this case is the objection that the special inquiry officer was subject to the supervision and control of officials in the Immigration Service charged with investigative and prosecuting functions. Petitioner would have us hold that the presence of this relationship so strips the hearing of fairness and impartiality as to make the procedure violative of due process. The contention is without substance when considered against the long-standing practice in deportation proceedings, judicially approved in numerous decisions in the federal courts, and against the special considerations applicable to deportation which the Congress may take into account in exercising its particularly broad discretion in immigration matters."

The Supreme Court has also held that the retroactive nature of the deportation does not violate due process of law. Galvan v. Press, 1954, 347 U.S. 522, 530, 74 S.Ct. 737, 742, 98 L.Ed. 911:

"In light of the expansion of the concept of substantive due process as a limitation upon all powers of Congress, even the war power, see Hamilton v. Kentucky Distilleries Co., 251 U.S. 146, 155, 40 S.Ct. 106, 107, 64 L.Ed. 194, much could be said for the view, were we writing on a clean slate, that the Due Process Clause qualifies the scope of political discretion heretofore recognized as belonging to Congress in regulating the entry and deportation of aliens. And since the intrinsic consequences of deportation are so close to punishment for crime, it might fairly be said also that the *ex post facto* Clause, even though applicable only to punitive legislation, should be applied to deportation.

"But the slate is not clean. As to the extent of the power of Congress under review, there is not merely 'a page of history,' New York Trust Co. v. Eisner, 256 U.S. 345, 349, 41 S.Ct. 506, 507, 65 L.Ed. 963, but a whole volume. Policies pertaining to the entry of aliens and their right to remain here are peculiarly concerned with the political conduct of government. In the enforcement of these policies, the Executive

Branch of the Government must respect the procedural safeguards of due process. The Japanese Immigrant Case, [Yamataya v. Fisher] 189 U.S. 86, 101, 23 S.Ct. 611, 614, 47 L.Ed. 721; Wong Yang Sung v. McGrath, 339 U.S. 33, 49, 70 S.Ct. 445, 453, 94 L.Ed. 616. But that the formulation of these policies is entrusted exclusively to Congress has become about as firmly imbedded in the legislative and judicial tissues of our body politic as any aspect of our government. And whatever might have been said at an earlier date for applying the *ex·post facto* Clause, it has been the unbroken rule of this Court that it has no application to deportation.

"We are not prepared to deem ourselves wiser or more sensitive to human rights than our predecessors, especially those who have been most zealous in protecting civil liberties under the Constitution, and must therefore under our constitutional system recognize congressional power in dealing with aliens, on the basis of which we are unable to find the Act of 1950 unconstitutional. See Bugajewitz v. Adams, 228 U.S. 585, 33 S.Ct. 607, 57 L.Ed. 978, and Ng Fung Ho v. White, 259 U.S. 276, 280, 42 S.Ct. 492, 493, 66 L.Ed. 938."

■ A holding of the Supreme Court is, of course, a mandate upon me and I am not permitted to anticipate that the court may hold otherwise if the question were presented to it at this time. "If the question is to be reopened the Supreme Court must open it." [1]

■ Plaintiff also urges that there is no evidence of anything more than "nominal" membership for which plaintiff is not deportable under the Galvan case. The testimony indicates, however, that the plaintiff was an active member of the Communist Party of the United States and the Young Communist League for several years. There is also testimony that the Young Communist League was a section of the Communist Party of the United States.

■ The entire evidence of the Government against the plaintiff was given by two informers, one who stated he testified in "5 or 6" similar cases and the other who testified that he appeared as a witness in "25 or 30" similar cases. They also stated that they were paid by the Department of Justice for such services. The plaintiff urges that the testimony given by such "professional witnesses" ought not to be given any weight, particularly in a proceeding which may result in the banishment from the United States of a man who has lived here for thirty-three years and who, even under the Government charges, has not been identified with the Communist Party or its affiliates for over twenty years. But the examining officer and his reviewing authority considered the evidence of such witnesses credible and I may not set aside the finding of credibility.

The motion for a summary judgment is granted.

---

[1]. Judge Learned Hand, speaking for the court in United States v. Rebhuhn, 2 Cir., 1940, 109 F.2d 512, 514.